The Honorable Ricardo S. Martinez

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| Seth Baker, et al., | ) No. 11-cv-00722-RSM |
| | ) |
| Plaintiffs, | ) MICROSOFT'S MOTION TO STRIKE |
| | ) PLAINTIFFS' CLASS ALLEGATIONS |
| v. | ) OR, IN THE ALTERNATIVE, DENY |
| | ) CERTIFICATION OF PLAINTIFFS' |
| Microsoft Corporation, | ) PROPOSED CLASSES |
| | ) |
| Defendant. | ) ***Note on Motion Calendar:*** |
| | ) October 14, 2011 |
| | ) |
| | ) **ORAL ARGUMENT REQUESTED** |
| | ) |

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150  Fax: (206) 757-7700

# TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................................................1

II.  PROCEDURAL BACKGROUND................................................................................2

    A.  Plaintiffs' Counsel Litigated the Same Claims on Behalf of the Same Proposed Classes..................................................................................................2

    B.  Judge Coughenour Denied Plaintiffs' Motion for Class Certification...........................3

    C.  Plaintiffs Now Seek Certification of the Very Classes Judge Coughenour Refused to Certify. .................................................................................................4

III.  STATEMENT OF FACTS ........................................................................................5

    A.  The Xbox 360 Console. ...................................................................................5

    B.  Microsoft Designed the Xbox 360 Console to Withstand a Wide Variety of Game-Play Conditions. ....................................................................................7

    C.  Only a Tiny Fraction of Xbox 360 Owners Contacted Microsoft about Scratched Game Discs. .................................................................................8

    D.  Independent Testing Confirms the Xbox 360 Console Does Not Scratch Game Discs unless Moved with Sufficient Force During Game Play. .................................9

IV.  ARGUMENT ......................................................................................................12

    A.  The Federal Rules of Civil Procedure Encourage Early Examination of Class Allegations. .................................................................................................12

    B.  This Court Should Apply Principles of Comity and Strike Plaintiffs' Class Claims in Light of Judge Coughenour's Order Denying the *Scratched Disc* Plaintiffs' Motion for Class Certification.................................................................................................12

        1.  Plaintiffs Cannot Rebut the Presumption against Aggregate Treatment Based on Arguments of Inadequate Representation..................................................14

        2.  Plaintiffs Cannot Rebut the Presumption against Aggregate Treatment Based on a Supposed Change in the Law.....................................................................15

    C.  In the Alternative, the Court Should Deny Certification of Plaintiffs' Proposed Classes.......................................................................................................18

        1.  The Court Should Deny Certification of Plaintiffs' Proposed Damaged Disc Subclasses. .................................................................................................19

2.  The Court Should Deny Certification of Plaintiffs' Proposed Console Owners' Class Allegations. ...................................................................20

3.  The Court Also Should Deny Certification of Plaintiffs' Proposed Nationwide Classes Due to Predominantly Individual Issues of Law. .........................................21

V.    CONCLUSION.................................................................23

**TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Burdick v. Union Sec. Ins. Co.*,
    2009 WL 4798873 (C.D. Cal. Dec. 9, 2009) ...........................................................17

*Carnegie Nat. Bank v. City of Wolf Point*,
    110 F.2d 569 (9th Cir. 1940) ...............................................................................14

*De Maurez v. Swope*,
    110 F.2d 564 (9th Cir. 1940) ...............................................................................14

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006)..................................................................................17

*Estate of Felts v. Genworth Life Ins. Co.*,
    250 F.R.D. 512 (W.D. Wash. 2008) .....................................................................22

*Fisher v. Bristol-Myers Squibb Co.*,
    181 F.R.D. 365 (N.D. Ill. 1998) ...........................................................................22

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982)..............................................................................................12

*Harding v. Tambrands Inc.*,
    165 F.R.D. 623 (D. Kan. 1996)............................................................................22

*Hardy v. North Butte Mining Co.*,
    22 F.2d 62 (9th Cir. 1927) ...................................................................................14

*In re Bridgestone/Firestone, Inc.*,
    288 F.3d 1012 (7th Cir. 2002) .............................................................................21

*In re Light Cigarettes Mktg. Sales*,
    271 F.R.D. 402 (D. Me. 2010)..............................................................................17

*In re Masonite Corp. Hardboard Siding Prods. Liab. Litig.*,
    170 F.R.D. 417 (E.D. La. 1997)...........................................................................22

*LaCasse v. Wash. Mut., Inc.*,
    198 F. Supp. 2d 1255 (W.D. Wash. 2002)......................................................12, 19

*Lumpkin v. E.I. DuPont De Nemours & Co.*,
    161 F.R.D. 480 (M.D. Ga. 1995).....................................................................18, 19

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*,
    244 F. Supp. 2d 289 (S.D.N.Y. 2003)......................................................17

*Sanders v. Apple, Inc.*,
    672 F. Supp. 2d 978 (N.D. Cal. 2009) .........................................12, 17

*Sidney-Vinstein v. A.H. Robbins Co.*,
    697 F.2d 880 (9th Cir. 1983) ...........................................................12

*Sipper v. Capital One Bank*,
    2002 WL 398769 (C.D. Cal. Feb. 28, 2002)....................................18

*Smith v. Bayer Corp.*,
    131 S.Ct. 2368 (S. Ct. June 16, 2011)...........................................1, 13

*TCF Film Corp. v. Gourley*,
    240 F.2d 711 (3d Cir. 1957).............................................................14

*Tietsworth v. Sears, Roebuck & Co.*,
    720 F. Supp. 2d 1123 (N.D. Cal. 2010) ..........................................12

*Vinole v. Countrywide Home Loans, Inc.*,
    571 F.3d 935 (9th Cir. 2009) .....................................................12, 18

*Webb v. Carter's Inc.*,
    272 F.R.D. 489 (C.D. Cal. 2011), denied .........................16, 17, 18, 21

*Wolin v. Jaguar Land Rover N. Am.*,
    617 F.3d 1168 (9th Cir. 2010) ................................................ *passim*

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) .........................................................22

**STATE CASES**

*Henry Schein, Inc. v. Stromboe*,
    102 S.W.3d 675 (Tex. 2002)............................................................22

*Schnall v. AT&T Wireless Services, Inc.*,
    No. 80572-5, 2011 WL 1434644 (Wash. 2011) ...........................2, 23

*Torres v. Microsoft Corp.*,
    Case No. 07-1121-JCC ................................................................2, 3

**RULES**

Fed. R. Civ. P. 23...............................................................................18

Fed. R. Civ. P. 23(a)(4)......................................................................15

Fed. R. Civ. P. 23(b)(3)........................................................................................1

Fed. R. Civ. P. 23(d)(1)(D)...............................................................................12

Fed. R. Civ. P. 23(f).........................................................................................1, 4

**SECONDARY AUTHORITIES**

American Law Institute, Principles of the Law Aggregate Litigation § 2.11, cmt. C
  (2010)..................................................................................................13, 14

7AA Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Fed. Prac. & Proc. Civ. 3d
  § 1785.1 (2005)..........................................................................................17

## I.   INTRODUCTION

Plaintiffs bring a putative class action alleging that Microsoft's Xbox 360 video game console scratches game discs under normal use.  In October 2009, Judge Coughenour denied certification of the *same* classes Plaintiffs purport to represent here, in an action brought by the *same* lawyers.  Plaintiffs seek to justify their renewed filing by arguing that the Ninth Circuit's decision in *Wolin v. Jaguar Land Rover N. Am.*, 617 F.3d 1168 (9th Cir. 2010), merits reconsideration of Judge Coughenour's Order and the re-litigation of their class claims, because Judge Coughenour relied on portions of the *Wolin* trial court opinion.  But *Wolin* changes nothing.  The Court should therefore invoke principles of comity, as suggested by the Supreme Court in *Smith v. Bayer Corp.*, 131 S.Ct. 2368, 2378-79 (S. Ct. June 16, 2011), defer to Judge Coughenour's Order, and strike Plaintiffs' class claims as an inappropriate attempt to both re-litigate a class certification motion and to seek reconsideration of a decision the Ninth Circuit refused to accept for review under Rule 23(f).

Renewed litigation of class certification issues would waste judicial resources because the proper result clearly would be to deny class certification for the same reasons Judge Coughenour did:  the proposed class claims raise predominantly individual issues.  Plaintiffs' "Damaged Disc" subclasses fail Rule 23(b)(3)'s predominance test because Plaintiffs have no class-wide method for proving whether an allegedly defective console proximately caused the disc scratching alleged.  Xbox 360 consoles will scratch discs if accidentally knocked over or rotated while a disc is spinning.  But as Judge Coughenour recognized, a jury could find, depending on individual circumstances, that a scratched disc was proximately caused not by an allegedly defective Xbox 360 console, but by the owner's actions (in moving the console while in operation, for example).  Individual factual determinations on this core issue of causation could never be extrapolated to the proposed subclass as a whole, making class treatment improper.

Plaintiffs' proposed "Nationwide Console Class," on the other hand, consists almost entirely of millions of people whose Xbox 360 consoles *never* scratched a game disc.  Indeed, at the time Judge Coughenour denied class certification, the evidence showed *barely 0.4%* of Xbox

360 consoles sold in the United States **may have** scratched a game disc. Stated differently, the available evidence suggested over 99.6% of the Xbox 360 consoles sold in the United States **never** scratched a game disc. Plaintiffs' Complaint fails to allege these uninjured console owners suffered any legally cognizable harm. As Judge Coughenour recognized, such a class may not be certified; rather, individual inquiries would be necessary to determine whose Xbox 360 consoles scratched a disc—the only legally cognizable harm alleged—and, even more importantly, why.

Finally, Judge Coughenour correctly held that individual issues of law also foreclose certification of nationwide classes. The Xbox 360 Limited Warranty's choice of law clause specifies that a consumer's home state's law will control tort, product liability, and consumer protection claims. As a result, trying the claims of a nationwide class would require application of the law of fifty different states, rendering the case unmanageable. The Washington Supreme Court recently reaffirmed the basis for Judge Coughenour's decision, holding that a similar choice of law clause barred a nationwide class action against a Washington company under Washington law. *Schnall v. AT&T Wireless Services, Inc.*, No. 80572-5, 2011 WL 1434644 (Wash. 2011).

## II. PROCEDURAL BACKGROUND

### A. Plaintiffs' Counsel Litigated the Same Claims on Behalf of the Same Proposed Classes.

In July 2007, three of the five law firms that bring this lawsuit commenced a nationwide class action against Microsoft in this Court alleging a design defect in the Xbox 360 that caused it to scratch game discs. *Torres v. Microsoft Corp.*, Case No. 07-1121-JCC [Dkt. No. 1]. After the other two firms here (and two others that evidently decided to stay on the sidelines this time) brought four more virtually identical lawsuits, the cases were consolidated in this Court and a Consolidated Complaint was filed (the "*Scratched Disc Litigation*"). *Id.* [Dkt. No. 28]. Plaintiffs subsequently filed an Amended Consolidated Complaint ("Am. Compl."). [Dkt. No. 45].

In their Amended Complaint, Plaintiffs (the "*Scratched Disc* Plaintiffs") alleged a defect in the Xbox 360 in that "[d]uring normal and intended use, the Xbox 360 frequently scratche[s] game discs rendering them unusable by the consumer." *Id.* ¶ 1.4. Before seeking class

MOTION TO STRIKE CLASS ALLEGATIONS
 (NO. 11-CV-00722) – 2
DWT 17330410v4 0025936-001400

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
(206) 622-3150  Fax: (206) 757-7700

certification, plaintiffs engaged in exhaustive discovery: they served ninety-five document requests resulting in the production of over 37,000 pages; they deposed several Microsoft employees and Microsoft's expert; and they subpoenaed third-parties for relevant documents. *See* declaration of Fred Burnside ("Burnside Decl.") ¶¶ 2-3. Microsoft served interrogatories and requests for production on the five *Scratched Disc* Plaintiffs and took their depositions, and it also deposed their expert. *Id.*

After more than 16 months of litigation and more than a year of discovery, the *Scratched Disc* Plaintiffs finally asked Judge Coughenour to certify two classes. Class Cert. Mot. [Dkt. No. 58] at 2. The first, the "Console Owners Class," included "all persons residing in the United States who, within four years preceding the filing of Plaintiffs' complaint on July 18, 2007, purchased or were given an Xbox 360 console," without regard to whether members of that proposed class ever encountered any problem with scratched discs. *Id.* The second, the "Damaged Disc Subclass," included "all members of the Console Owners Class who purchased or were given Xbox 360 game discs that were subsequently scratched by an Xbox 360 console and rendered unusable." *Id.* After six more months of briefing, depositions, and discovery, class certification was fully briefed in May 2009, and Judge Coughenour heard argument in September 2009. *See* Burnside Decl. ¶ 4 & Ex. D.

**B.      Judge Coughenour Denied Plaintiffs' Motion for Class Certification.**

In October 2009, Judge Coughenour denied the *Scratched Disc* Plaintiffs' motion for class certification. *See* Order Denying Pls.' Mot. for Class Cert. ("*Scratched Disc* Order"), Burnside Decl. ¶ 4 & Ex. E. As to the proposed Console Owners' Class, the court found that "individual issues of ***damages***" predominate. *Scratched Disc* Order at 11 (emphasis in original). Judge Coughenour recognized that "millions" of "happy customers" have enjoyed—and will continue to enjoy—their consoles without it ever scratching a game disc. *Id.* at 10. Even assuming their consoles contained an unmanifested design defect, these consumers suffered no legally cognizable injury and, thus, could not be members of Plaintiffs' proposed class.

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
(206) 622-3150  Fax: (206) 757-7700

As to the Damaged Disc Subclass, Judge Coughenour found that "[i]ndividual issues of *causation*" precluded certification. *Id.* at 11(emphasis in original) . The Court recognized that whether a game disc was scratched as a result of an alleged design defect—or some cause independent of any alleged defect, such as a user or pet accidentally knocking over the console during play—would present individual issues of fact for the jury. *Id.* at 11.

In addition, Judge Coughenour denied the *Scratched Disc* Plaintiffs' class certification motion on the ground that "individual issues of law predominate over common issues of law." *Id.* at 9. The limited warranty packaged with every Xbox 360 console provides that "***[t]he laws of your state of residence will apply to any tort claims and/or any claims under any consumer protection statutes.***" *Id.* at 5(emphasis in original). Because the choice-of-law clause is enforceable, *id.* at 6, the Court would have had to apply the "State consumer-protection law" of all fifty States. *Id.* at 9. As Judge Coughenour recognized, "[t]his defect alone would justify the Court in denying Plaintiffs' motion for class certification, as the application of fifty different state laws in a single adjudication would create innumerable difficulties." *Id.*

The *Scratched Disc* Plaintiffs petitioned the Ninth Circuit for review under Rule 23(f), but the Ninth Circuit denied review on January 21, 2010. *See* Burnside Decl. ¶ 4 & Ex. F. The *Scratched Disc* Plaintiffs then reached a resolution of their individual claims and dismissed their action voluntarily. *See id.* & Ex. G.

### C. Plaintiffs Now Seek Certification of the Very Classes Judge Coughenour Refused to Certify.

The same lawyers, representing new Plaintiffs, filed this virtually identical action 15 months later. Plaintiffs asserted claims for breach of warranty and products liability on behalf of two proposed nationwide classes, in addition to statutory consumer protection claims on behalf of five proposed state-specific classes consisting, respectively, of the residents of California, Illinois, Michigan, New York, and Washington. *See, generally*, Complaint (Dkt. No. 1) ("Compl."). On June 27, 2011, the new Plaintiffs filed an amended complaint, changing none of their substantive allegations but altering their proposed classes and the claims they asserted. *See* Am. Compl. Dkt. No. 10) ("2011 Am. Compl."). Signaling an intent to attack Judge Coughenour's ruling on their

MOTION TO STRIKE CLASS ALLEGATIONS
 (NO. 11-CV-00722) – 4
DWT 17330410v4 0025936-001400

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
(206) 622-3150  Fax: (206) 757-7700

contractual choice of law, they dropped their Washington Subclass; modified their Washington Consumer Protection Act ("CPA") claim to assert it on behalf of a Nationwide Class instead of the Washington-only class (*see* 2011 Am. Compl. ¶¶ 177 et seq.); and added new allegations to buttress efforts to apply the CPA to a nationwide class (*id.*, ¶¶ 29, 37).

## III.    STATEMENT OF FACTS

In ruling on the *Scratched Disc* Plaintiffs' class certification motion, the Court had before it a comprehensive evidentiary record.  Microsoft here summarizes that record.[1]

### A.    The Xbox 360 Console.

Microsoft produces and sells the Xbox 360 video game console, its successor to the original Xbox console. *Scratched Disc* Order at 2.  The Xbox 360 console, released in November 2005, has been a resounding commercial success. *Id.*  In May 2008, the console became the first current-generation gaming console to sell over 10 million units in the United States. *Id.*

The Xbox 360's technological advances have attracted video game enthusiasts.  Due in part to its ability to spin game discs in the optical disc drive ("ODD") at 7,500 revolutions per minute, far faster than its competition,[2] the Xbox 360 has received awards for supporting the most advanced video games on the market. *See, e.g.*, Burnside Decl. ¶ 5 & Ex. H.  (None of the judges of the Game Critics Awards reported that the Xbox 360 console scratched their game discs.)  The *Scratched Disc* Plaintiffs all testified that the technological superiority of the Xbox 360 console (and the games available for play) influenced their decisions to buy the console.[3]

---

[1]  For the Court's convenience, Microsoft will attach copies of the cited portions of the *Scratched Disc Litigation* record to the Burnside Decl., filed with this Motion.

[2]  The Sony PlayStation 3 and Nintendo's Wii spin game discs at a maximum speed of 4,000 and 3,500 revolutions per minute, respectively. *Scratched Disc* Order at 2.

[3]  *See* Hanson Dep. 23:12-14 ("A lot of it was the games it could play and just had really high definition graphics."); Wood Dep. 27:2-6 ("PlayStation 2's games at the time weren't nearly as far as what Xbox came out with, or 360."); H. Moskowitz Dep. 17:13-17 ("Best games came on that [Xbox 360] system."); Caraballo Dep. 42:10-16 ("Well, first was because of the list of games they had."); Torres Dep. 27:16-28:11 ("It was the new thing. . . .  [T]hey were saying that it was the better and faster thing for its time."). Copies of the cited portions of the *Scratched Disc* Plaintiffs' depositions are attached to the Burnside Decl. ¶¶9-18 & Exs. O-W.

MOTION TO STRIKE CLASS ALLEGATIONS
 (NO. 11-CV-00722) – 5
DWT 17330410v4 0025936-001400

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
(206) 622-3150  Fax: (206) 757-7700

But, like any piece of electrical equipment, the Xbox 360 console has limits: if moved too quickly in the wrong direction, it may scratch the disc spinning inside. (Indeed, the *Scratched Disc* Plaintiffs' expert conceded that "[m]ovement of the Xbox 360" is the "[c]ause of [s]cratched [g]ame [d]iscs." *See* Dkt. No. 83, at 5.) For that reason, Microsoft warns consumers, in the product manual shipped with every Xbox 360 console, that they should remove game discs **before** moving the console or tilting it between a horizontal and vertical position. *Scratched Disc* Order at 3, 11. Specifically, the manual reads, in pertinent part:

> **IMPORTANT**
>
> To avoid jamming the disc drive and damaging discs or the console:
>
> - Remove discs before moving the console or tilting it between the horizontal and vertical positions.

*See* Burnside Decl. ¶ 6 & Exs. K-I. To make sure customers know they should not move their Xbox 360 consoles while a disc is spinning, Microsoft also affixes a sticker to the front of the ODD advising users in English, French, and Spanish that they should "not move console with disc in tray." *Scratched Disc* Order at 3. The sticker looks like this:



Burnside Decl. ¶ 7 & Ex. J. This sticker covers the front of the disc tray mechanism and the "eject" button. *Id.* As a result, the Xbox 360 console **cannot be used** until the user interrupts his or her routine and peels off the sticker. *See* H. Moskowitz Dep. 40:7-41:9 (noting that exclamation point caused him to read warning label).

Microsoft's customer service agents advise consumers who call about scratched game discs that moving the console can cause it to scratch game discs. *See* Park Dep. (Burnside Decl., Ex. V) 94:9-14; 95:9-12. *See also* Caraballo Dep. (Burnside Decl., Ex. S) 85:19-25 ("Q. When you talked to the customer service agent, whether the first agent or the second agent, did they ask you if you moved the console? A. I -- I believe the second one did. He asked me the positioning of the console and if it was moved."). Many websites and third parties also warn users not to

MOTION TO STRIKE CLASS ALLEGATIONS
 (NO. 11-CV-00722) – 6
DWT 17330410v4 0025936-001400

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
(206) 622-3150  Fax: (206) 757-7700

move their Xbox 360 consoles while a game disc is operating.  Burnside Decl. ¶ 6, Ex. I

(collecting articles).

**B.**    **Microsoft Designed the Xbox 360 Console to Withstand a Wide Variety of Game-Play Conditions.**

Microsoft recognizes consumers play Xbox 360 consoles in a variety of settings.  For this

reason, it designed the console to withstand game-play conditions far more demanding than those

typically seen in a home environment.  Hiroo Umeno, the former Program Manager on the Xbox

Console System Development Team, testified that Microsoft requires the consoles to withstand

vibrations well beyond those experienced in buildings or homes close to train stations and heavy

traffic.  *See* Declaration of Hiroo Umeno ("Umeno Decl.") ¶¶ 4, 6 & Exs. 1, 2.[4]

To ensure the ODDs meet Microsoft's specifications, Microsoft requires the vendors who

manufacture the ODDs to perform a variety of tests.  To pass the vibration and shock tests, the

vendors must verify that the console does ***not*** scratch game discs even when shocks or vibrations

are applied during game play.  Umeno Decl., Ex. 4 at ¶¶ 6.3.2.4.3, 6.3.2.8.3 ("There shall be no

tray stuck or media scratches failure.").  Every Xbox 360 console released to the general public

contains an ODD that passed these vendor tests.  *Id.* ¶ 11.

Microsoft also engages independent testing laboratories to perform qualification testing.

*Id.* ¶ 12 & Ex. 5.  These tests are designed to ensure the ODDs can withstand far more than the

vibration and physical shock that might arise during normal use.  *Id.*  Specifically, the vibration

tests ensure that consoles will not scratch discs during game play even when subjected to more

vibration than would incur during an enormous earthquake.  Caligiuri Decl. (Burnside Decl., Ex.

C) ¶¶ 12, 19.  *See also* Umeno Decl. ¶ 6 & Ex. 2.  And the shock tests deliver an abrupt force

equivalent to kicking a table and causing the console to jump one-half inch off the table.

Caligiuri Decl. ¶ 27.  *See also* Umeno Decl. ¶ 7 & Ex. 3.  For an ODD to pass this round of

---

[4] The specifications and testing protocols attached to Mr. Umeno's declaration have been filed subject to a motion to seal, as the documents were sealed in the *Scratched Disc Litigation*.  Although the details of those documents are confidential, Microsoft has not sought to protect the fact that it imposed performance requirements or the goal of making the consoles fit for normal use.

MOTION TO STRIKE CLASS ALLEGATIONS
  (NO. 11-CV-00722) – 7
DWT 17330410v4 0025936-001400

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
(206) 622-3150  Fax: (206) 757-7700

testing, "[t]here shall be no tray stuck *or media scratches failure*."  Umeno Decl. Ex. 5 at ¶¶

8.7.2.2.1.3, 8.7.2.2.5.3 (emphasis added).  Microsoft never released an Xbox 360 console to the

general public that contains an ODD that failed its testing.  *Id.* ¶ 13.

In fact, Microsoft has never "been able to observe or recreate a circular scratch [on a game

disc] without movement of the console."  Umeno Dep. (Burnside Decl., Ex. W) 101:18-21.  In the

*Scratched Disc Litigation* Microsoft retained Dr. Robert Caligiuri, an engineer with Exponent

Failure Analysis, a leading engineering and scientific consulting firm, to examine and test Xbox

360 consoles.  As Dr. Caligiuri explained, the vibration necessary to cause the Xbox 360 console

to scratch a game disc would have to be so intense "*as to cause the console to overcome the*

*force of gravity and actually 'jump' off the surface on which it rested*."  *See* Caligiuri Decl. ¶

19; *id.* ¶¶ 12, 17-21 (emphasis in original).

Dr. Caligiuri's testing was largely consistent with the *Scratched Disc* Plaintiffs' expert,

Dr. Michael Sidman, who admitted he could not reproduce the scratches plaintiffs reported *unless*

he tilted or rotated the Xbox 360 console by 30 degrees while it was spinning a game disc.

Sidman Decl. (Burnside Decl., Ex. B) ¶ 38.  As Dr. Caligiuri explained, however, what was most

significant was not that the console was moved (or how far it was moved), but how *quickly* it was

moved.  Caligiuri Decl. ¶¶ 14, 42.  (Even Dr. Sidman conceded one could *carefully* move a

console between a horizontal and vertical position without causing it to scratch a game disc.

Sidman Dep. (Burnside Decl., Ex. U) 72:6-73:9.  Dr. Caligiuri had to rotate the consoles between

70 degrees and 130 degrees *per second* to induce a scratch.  Caligiuri Decl. ¶ 15.

Microsoft's testing of the *Scratched Disc* Plaintiffs' consoles confirmed they worked

normally even when vibrated and physically shocked—until subjected to enough shock to lift a

console suddenly one-half inch off the table.  *Id.* ¶¶ 29-39.  And even under those conditions,

their Xbox 360 consoles kept playing the games without incident.  *Id.* ¶ 38.

**C.      Only a Tiny Fraction of Xbox 360 Owners Contacted Microsoft about**
**        Scratched Game Discs.**

Microsoft knew before the launch of the Xbox 360 console that it could scratch game

discs *if moved* too quickly while a game disc was spinning.  *Scratched Disc* Order at 3; Umeno

MOTION TO STRIKE CLASS ALLEGATIONS
  (NO. 11-CV-00722) – 8
DWT 17330410v4 0025936-001400

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
(206) 622-3150  Fax: (206) 757-7700

Dep. 160:9-161:22; 190:16-193:3.  This is hardly remarkable.  Although the Sony PlayStation 3 spins game discs at 4,000 revolutions per minute (compared to 7,500 for the Xbox 360 console), even Sony's product manual tells PlayStation 3 owners that they should "not move or change the position of the system with a disc inserted.  The vibration may result in scratching of the disc or the system."  *See* Burnside Decl. ¶ 8 & Exs. M-N.

Whether as a result of Microsoft's warnings or common sense, Microsoft's customer service records show that only a tiny fraction of consumers reported the sort of disc scratching that can occur when game players move their Xbox 360 consoles while a game disc is spinning.  Indeed, even though Microsoft sold approximately 7.5 million Xbox 360 consoles in the United States by November 2007, only about 28,000 customers called Microsoft and mentioned a scratched game disc by that date.  Park Dep. 47:11-15; 111:18-114:23.  If one generously assumes that every one of these callers reported the type of deep, concentric scratches Plaintiffs allege, the number of callers equates to ***barely 0.4%*** of Xbox 360 consoles sold in the United States.  Put another way, the available evidence suggests that over 99.6% of the Xbox 360 consoles sold in the United States by November 2007 never scratched a game disc, i.e., they never manifested the problem Plaintiffs allege is inherent in every Xbox 360 console.

The experience of the *Scratched Disc* Plaintiffs shows just how uncommon it is for the Xbox 360 console to scratch game discs.  Although they alleged they owned an Xbox 360 console that scratched a game disc, five testified that they now have, and play, different Xbox 360 consoles that have ***not*** scratched game discs.[5]

> **D.** **Independent Testing Confirms the Xbox 360 Console Does Not Scratch Game Discs unless Moved with Sufficient Force During Game Play.**

To explore whether an Xbox 360 console could scratch a game disc without direct movement of the console, Microsoft asked Dr. Caligiuri in the *Scratched Disc Litigation* to

---

[5] *See*  Ling Dep. 71:11-74:7; Hanson Dep. 23:24-25:2; 26:14-20; 27:4-28:3; 51:21-53:12; 71:18-21; Torres Dep. 85:9-11 ("loaner" console from attorneys has not scratched game discs); Caraballo Dep. 77:18-21; 79:4-80:2 (plays replacement console received from Microsoft around 3 hours per week without scratches); *id.* 46:24-48:15 (knows at least two others who purchased Xbox 360 consoles, which have not scratched discs); Wood Dep. 20:8-15 (loaner console from attorneys has not scratched game discs). Burnside Decl., Exs. P, O, T, S, R.

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
(206) 622-3150  Fax: (206) 757-7700

arrange for console testing to determine the effect of vibrations on the console. Caligiuri Decl. ¶ 12. By resting an Xbox 360 console on a table and subjecting it to vibrations at a range of frequencies, Dr. Caligiuri's team of engineers mimicked the vibrations that would arise as a result of footfalls or trains. *Id.* ¶ 18. Their testing confirmed the vibrations a console might encounter during normal use could ***not*** cause the console to scratch a game disc. Indeed, the results showed that the sustained vibration needed to scratch a disc "***would have to be so intense as to cause the console to overcome the force of gravity and actually 'jump' off the surface on which it rested***." *Id.* ¶ 19 (emphasis in original). To put this in perspective, even an earthquake as powerful as the famous 1906 San Francisco earthquake would not produce a vibration load strong enough to cause an Xbox 360 console to jump off the surface of a table. *Id.*

Dr. Caligiuri also directed acoustic testing to see if loud noises, pointed at the Xbox 360 console, could induce a scratch (as some had theorized). *Id.* ¶ 20. His engineers positioned a 300-watt subwoofer—an exceptionally loud commercial speaker—next to a portable card table on which the consoles rested, and adjusted the subwoofer so that it emitted a range of vibrations at full power. *Id.* The Exponent engineers placed the Xbox 360 consoles on the table in the horizontal and vertical positions and kept game discs spinning (and the subwoofer blaring) for six hours in each orientation without producing ***any*** disc scratches or markings. *Id.*

Dr. Caligiuri even arranged to test five of the *Scratched Disc* Plaintiffs' consoles in the presence of their counsel (i.e., Plaintiffs' counsel here) and their expert. Caligiuri Decl. ¶¶ 29-31. Each was tested for a total of twelve hours of game play. *Id.* ¶ 31. As Microsoft expected, ***no disc scratches resulted***. *Id.* ¶ 32. Dr. Caligiuri also attempted to subject the consoles to vibration testing. *Id.* ¶ 33. Two of the plaintiffs' consoles were in such bad condition, however, that they could not undergo vibration testing. *Id.* ¶¶ 33, 34. As to the three that underwent vibration testing, ***none scratched a game disc*** despite being shaken violently while the disc was spinning at full speed. *Id.* ¶ 35. To induce a scratch, Dr. Caligiuri would have needed to apply a level of vibration "sufficient to cause the console to jump off its surface." *Id.*

MOTION TO STRIKE CLASS ALLEGATIONS
 (NO. 11-CV-00722) – 10
DWT 17330410v4 0025936-001400

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150 Fax: (206) 757-7700

Dr. Caligiuri then subjected each of the *Scratched Disc* Plaintiffs' consoles to a shock test (i.e., a sudden movement followed by an abrupt stop). *Id.* ¶¶ 22, 36-39. The magnitude of shock applied to the consoles was so large that, if applied in a vertical direction in a home environment, it would cause the console to jump more than one-half inch off the table. *Id.* ¶¶ 36-37. Even then, however, none of the consoles scratched a game disc when the shock was applied in the plane of the console. *Id.* ¶ 26. In other words, if a console was positioned horizontally, Dr. Caligiuri could not cause it to scratch a game disc if the shock was applied front-to-back or side-to-side. *Id.*

The only time Dr. Caligiuri was able to cause one of the *Scratched Disc* plaintiffs' consoles to scratch a game disc during shock testing was when he applied shock ***against*** the plane of the console. *Id.* ¶ 37. In other words, if the console was resting horizontally, Dr. Caligiuri could cause the console to scratch a game disc if he applied far more shock in ***a vertical direction*** than a console would ever experience in normal use. *Id.* Similarly, Dr. Caligiuri was able to cause a vertically oriented console to scratch a disc by applying a shock in a horizontal direction. *Id.* But even then, the games were not scratched enough to interrupt game play—and they did not display the concentric scratches Plaintiffs complain of here. *Id.* ¶ 38.

Even though a minuscule percentage of consumers reported scratches, Microsoft considered a variety of ways to reduce the possibility that the Xbox 360 console would scratch game discs if moved during play. Umeno Dep. 226-236. For example, Microsoft considered reducing the maximum speed that the optical disc drive could spin by 25%; that solution, however, adversely affected game play. *Id.* Microsoft also engaged its ODD suppliers to determine the feasibility of modifying the design of the drive in various ways. *Id.* 226:24-230:15. Each proposed design modification was rejected, however, because the change either failed to resolve the issue or caused problems that Microsoft considered more serious than the anecdotal reports of disc scratching. *Id.*

MOTION TO STRIKE CLASS ALLEGATIONS
 (NO. 11-CV-00722) – 11
DWT 17330410v4 0025936-001400

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
(206) 622-3150  Fax: (206) 757-7700

## IV. ARGUMENT

### A. The Federal Rules of Civil Procedure Encourage Early Examination of Class Allegations.

The Federal Rules of Civil Procedure encourage scrutiny of class allegations at the pleadings stage. Specifically, Rule 23(d)(1)(D) allows the Court to "require that the pleadings be amended to eliminate allegations about representation of absent persons." The U.S. Supreme Court has endorsed prompt examination of class allegations in a complaint. "Sometimes the issues are plain enough from the pleadings to determine whether the interests of absent parties are fairly encompassed within the named plaintiff's claim." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982).

A motion to strike is intended "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robbins Co.*, 697 F.2d 880, 885-86 (9th Cir. 1983). The Ninth Circuit has expressly endorsed a defendant's motion to strike class allegations, holding that a "defendant may move to deny class certification before a plaintiff files a motion to certify a class." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 939-41 (9th Cir. 2009); *see also LaCasse v. Wash. Mut., Inc.*, 198 F. Supp. 2d 1255, 1256-65 (W.D. Wash. 2002) (granting motion to strike class allegations); *Tietsworth v. Sears, Roebuck & Co.*, 720 F. Supp. 2d 1123, 1145-46 (N.D. Cal. 2010); *Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 990-91 (N.D. Cal. 2009).

Judge Coughenour denied certification of the *same* class claims brought by these *same* lawyers on behalf of the *same* plaintiff class. This Court should strike Plaintiffs' class allegations, or, alternatively, deny class certification on the existing record.

### B. This Court Should Apply Principles of Comity and Strike Plaintiffs' Class Claims in Light of Judge Coughenour's Order Denying the *Scratched Disc* Plaintiffs' Motion for Class Certification.

On October 5, 2009, Judge Coughenour denied certification of the same classes Plaintiffs seek to represent here. Based on principles of comity, this Court should strike the class claims at the pleading stage, without requiring re-litigation of the same issues.

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150 Fax: (206) 757-7700

Just last month, the United States Supreme Court recognized that principles of comity ordinarily preclude absent class members from re-litigating a denial of class certification. In *Smith v. Bayer Corp.*, 131 S. Ct. 2368 (S. Ct. June 16, 2011), a district court enjoined a state court from considering a plaintiff's request to certify a class action. *Id.* at 2370-72. The court did so on the ground it earlier denied a motion for class certification in a related case brought by a different plaintiff against the same defendant alleging similar claims. *Id.* The court thought its injunction appropriate to prevent re-litigation of its class certification decision. *Id.* The Supreme Court, however, held that collateral estoppel principles do not absolutely foreclose absent class members from re-litigating the propriety of a district court's class certification denial. The Court based its decision, in part, on the ground that "[t]he great weight of scholarly authority … agrees that an uncertified class action cannot bind proposed class members." *Id.* at 2381 n. 11 (citing, *inter alia*, ALI, Principles of the Law Aggregate Litigation § 2.11, Reporters' Notes, *cmt. b.*, p. 181 (2010)).

But the Supreme Court *also* recognized the abuses that could follow if absent class members repeatedly brought motions for class certification in the hopes of eventually finding a court to certify a class. For that reason, the Court made clear that "we would *expect* federal courts to apply principles of comity to each other's class certification decisions when addressing a common dispute." *Id.* at 2381 (emphasis added). Indeed, the section of the ALI treatise on which the Court based its core holding advocates the application of "[c]omity in lieu of preclusion." ALI, Principles of the Law Aggregate Litigation § 2.11, at 179. Thus, under comment b to Section 2.11, "a denial of class certification should raise a rebuttable presumption against the same aggregate treatment in another court. The basis for this presumption is not preclusion but, rather, comity." *Id.* To rebut the presumption, a party may make an "affirmative demonstration of inadequate representation in connection with an earlier denial of class certification." *Id.* at 180. "In addition, when the basis for the earlier denial … is no longer present in a subsequent proceeding …, the presumption stated in this Section would be rebutted." *Id.*

Principles of comity are firmly embedded in the law of this Circuit. Indeed, the Ninth Circuit has long recognized that "the various judges who sit in the same court should not attempt

MOTION TO STRIKE CLASS ALLEGATIONS
 (NO. 11-CV-00722) – 13
DWT 17330410v4 0025936-001400

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
(206) 622-3150  Fax: (206) 757-7700

to overrule the decisions of each other … except for the most cogent reasons." *Carnegie Nat. Bank v. City of Wolf Point*, 110 F.2d 569, 573 (9th Cir. 1940) (citation omitted). "It is highly indiscreet and injudicious for one judge of equal rank and power to review identical matters passed upon by his colleague." *De Maurez v. Swope*, 110 F.2d 564, 565 (9th Cir. 1940); *see also Hardy v. North Butte Mining Co*., 22 F.2d 62, 63 (9th Cir. 1927) ("[I]t would lead to unseemly conflicts, if the rulings of one judge, upon a question of law, should be disregarded, or be open to review by the other judge in the same case.") (citation omitted); *TCF Film Corp. v. Gourle*y, 240 F.2d 711, 713 (3d Cir. 1957) ("judges of co-ordinate jurisdiction sitting in the same court and in the same case should not overrule the decisions of each other").

Here, Plaintiffs cannot demonstrate they were inadequately represented in the *Scratched Disc Litigation* or that a relevant change in law has occurred since Judge Coughenour's Order. Accordingly, this Court should honor the Supreme Court's "expect[ation]," "apply principles of comity" to Judge Coughenour's Order, and strike Plaintiffs' class claims.

### 1. Plaintiffs Cannot Rebut the Presumption against Aggregate Treatment Based on Arguments of Inadequate Representation.

The ALI recognized that, after one court has denied class certification, the plaintiff in a second proceeding can rebut the presumption against aggregate treatment through an "affirmative demonstration of inadequate representation in connection with [the] earlier denial of class certification." ALI, Principles of the Law Aggregate Litigation § 2.11, cmt. c at 180. In particular, the "subsequent court" (i.e., this Court) "should guard against the possibility of strategic jockeying by defendants to obtain a favorable determination of the aggregation question in a proceeding in which the lawyers for claimants operate under structural conflicts of interest" that impair the adequacy of their representation. *Id.*

Plaintiffs cannot seriously argue "inadequate representation in connection with [the] earlier denial of class certification" in the *Scratched Disc Litigation*. The ALI makes clear that concerns over adequacy of representation speak to the interests of counsel. ALI, Principles of the Law Aggregate Litigation § 2.11, cmt. c, at 180. Here, however, Plaintiffs have hired the same lawyers that represented the *Scratched Disc* Plaintiffs. If Plaintiffs now urged inadequacy of

MOTION TO STRIKE CLASS ALLEGATIONS
 (NO. 11-CV-00722) – 14
DWT 17330410v4 0025936-001400

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150 Fax: (206) 757-7700

representation, they would therefore doom class certification here as well, based on their own inability to show adequacy under Rule 23(a)(4).

**2. Plaintiffs Cannot Rebut the Presumption against Aggregate Treatment Based on a Supposed Change in the Law.**

Unable to rely upon inadequacy of representation in the first proceeding, Plaintiffs suggest the law has changed since the *Scratched Disc* Order. Plaintiffs justify their effort to obtain a second bite at the apple on the ground that Judge Coughenour's denial of class certification relied in part on a trial court decision the Ninth Circuit later reversed in part in *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010). 2011 Am. Compl. ¶ 2. In fact, however, *Wolin* changes nothing.

In *Wolin*, plaintiffs sued on behalf of all persons who purchased Land Rover LR3 vehicles in Michigan and Florida. *Id*. at 1171. The vehicles allegedly suffered from an "alignment geometry" defect that caused their wheels not to be aligned (i.e., pointed in the same direction) and thus caused tires to wear prematurely. Plaintiffs moved for certification of two classes: (1) all persons who purchased the particular Land Rovers, and (2) all persons whose tires wore prematurely. *Id*. at 1170, 1174. The district court denied class certification, in part "because [plaintiffs] were unable to prove that a majority of potential class members suffered from the consequences of the alleged alignment defect." *Id*. at 1170. Pointing to that reasoning, the Ninth Circuit reversed and remanded the case to the district court to reconsider certification. *Id*.

Unlike the district court in *Wolin*, however, Judge Coughenour did ***not*** rest his decision on the *Scratched Disc* Plaintiffs' inability to prove that "a majority of potential class members suffered from the consequences of the alleged alignment defect." *Id*. Instead, after more than a year of discovery, the evidence before Judge Coughenour showed the *Scratched Disc* Plaintiffs had no class-wide method for proving whether any particular game disc was scratched as a result of an allegedly defective console or because of use/misuse by the gamer.

On this point, the Ninth Circuit's decision in *Wolin* ***supports*** Judge Coughenour's decision. In discussing the denial of certification of the *Wolin* plaintiffs' claim under the Land Rover Tire Warranty, the Ninth Circuit observed:

MOTION TO STRIKE CLASS ALLEGATIONS
(NO. 11-CV-00722) – 15
DWT 17330410v4 0025936-001400

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150 Fax: (206) 757-7700

> Claims for breach of the Tire Warranty do not easily satisfy the predominance test. ***A determination whether the defective alignment caused a given class member's tires to wear prematurely requires proof specific to that individual litigant***. … Tires deteriorate at different rates depending on where and how they are driven. Whether each proposed class member's tires wore out, and whether they wore out prematurely and as a result of the alleged alignment defect, are individual causation and injury issues that could make class wide adjudication inappropriate.

*Id*. at 1174 (emphasis added).  The Court then directed the district court, in light of these comments, to "address this issue on remand because it did not previously address it in light of the threshold manifestation requirement it imposed." *Id*.

Thus, nothing in *Wolin* calls into question Judge Coughenour's core holding as to the Damaged Disc Class, i.e., that the *Scratched Disc* Plaintiffs cannot prove causation on a class basis.  Nor does *Wolin* address Judge Coughenour's finding that individual issues of harm would likewise predominate in trial of the claims of the proposed Console Owners Class.  As the Court recognized, individuals whose consoles had not (and will not) scratch game discs have not suffered a legally cognizable harm.  *Scratched Disc* Order at 11-12.  And determining which proposed class members ***did*** suffer harm—i.e., scratched discs as a result of the alleged console defect, the only harm alleged—and thus have an arguable claim against Microsoft, would require individual inquiries, which would predominate at trial.  *Id*.

Although Judge Coughenour found the district court's opinion in *Wolin* "persuasive," *Scratched Disc* Order at 10, his reasoning remains sound, and the Ninth Circuit's decision in *Wolin* does nothing to undermine it.  In fact, just months ago, the Central District of California in *Webb v. Carter's Inc.*, 272 F.R.D. 489 (C.D. Cal. 2011), denied a motion for class certification for precisely the same reason as Judge Coughenour:  the evidence showed Plaintiffs' proposed class would include a vast number of individuals who suffered no harm, and identifying the tiny percentage who had arguable claims would require predominantly individual proof.  In *Webb*, consumers claimed Carter's knowingly sold children's clothing containing chemicals in tagless labels' ink that caused skin irritation in some infants.  *Id*. at 493.  They sought certification of three classes, including a class of "all persons in the United States who purchased and/or acquired Carter's infant apparel products with tagless labels made for the Fall 2007 line."  *Id*. at 497.

MOTION TO STRIKE CLASS ALLEGATIONS
(NO. 11-CV-00722) – 16
DWT 17330410v4 0025936-001400

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
(206) 622-3150  Fax: (206) 757-7700

Carter's, however, produced evidence that the overwhelming majority of children who wore the clothing had no adverse reaction and, thus, suffered no injury. *Id.* at 499-500. The district court agreed that, in these circumstances, it could not certify a class:

> [T]he evidence shows that only a very small percentage of children experienced any negative reaction to the tagless labels. Plaintiffs therefore cannot show that the proposed class members suffered an injury that would allow them to press a claim for breach of the implied warranty of merchantability. They therefore have not shown that those class members suffered a cognizable injury sufficient to give them Article III standing. For these reasons, the Court concludes that the members of the proposed classes lack standing. On this basis alone, the Court must deny the motion for class certification.

*Id.* at 500.[6]

Notably, the district court in *Webb* rejected the plaintiffs' argument that, under *Wolin*, it made no difference that the overwhelming majority of absent class members suffered no injury. As the *Webb* court explained, the defect in *Wolin* was "such … that the ***injury was inevitable*** and would require earlier than normal tire replacement." *Id.* at 498 (emphasis added). In fact, Land Rover "issued a Technical Service Bulletin indicating that the tires on certain vehicles may wear prematurely and unevenly due to the vehicles' steering alignment geometry." *Wolin*, 617 F.3d at 1170-71. As a result, Land Rover "began to cover the costs of temporarily fixing the defect on a pro rata basis." *Id.* at 1171. Moreover, the *Wolin* plaintiffs argued that all class members suffered harm—regardless of whether their tires had prematurely worn—"***because consumers' vehicles are worth less due to the defect***." *Id.* at 1176 (emphasis added).[7]

---

[6] "[T]o avoid a dismissal based on a lack of standing, the court must be able to find that both the class and the representatives have suffered some injury requiring court intervention." 7AA Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Fed. Prac. & Proc. Civ. 3d § 1785.1 (2005). *See also Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006) ("[N]o class may be certified that contains members lacking Article III standing."); *In re Light Cigarettes Mktg. Sales*, 271 F.R.D. 402, 420 (D. Me. 2010) (denying motion for class certification where plaintiffs' proposed class included individuals who "were not injured by the Defendants' misconduct"); *Burdick v. Union Sec. Ins. Co.*, 2009 WL 4798873, at *3-4 (C.D. Cal. Dec. 9, 2009) (granting motion to decertify class where it would include individuals who suffered no harm); *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009) (granting motion to strike class claims where it would include, *inter alia*, "individuals who suffered no damages"); *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 244 F. Supp. 2d 289, 334 (S.D.N.Y. 2003) (noting that "each member of the class must have standing with respect to injuries suffered as a result of defendants' actions").

[7] An "alignment geometry" defect causing vehicles' wheels to point in different directions logically could reduce the resale value of a high-end car, such as a Land Rover. On remand, however, the *Wolin* plaintiffs ***still*** must show how they would establish a market value reduction with class-wide proof. The parties have fully briefed that issue, but the *Wolin* district court has not yet resolved it.

MOTION TO STRIKE CLASS ALLEGATIONS
(NO. 11-CV-00722) – 17
DWT 17330410v4 0025936-001400

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150 Fax: (206) 757-7700

The *Scratched Disc Litigation*, like *Webb*, was different than *Wolin*. In *Webb*, as in *Scratched Disc Litigation* and here, manifestation of the purported defect was far from "inevitable." *Webb*, 272 F.R.D. at 498. As in *Webb*, the evidence in *Scratched Disc Litigation* showed millions of proposed class members had, and have, Xbox 360 consoles that never scratched a game disc—leaving those proposed class members uninjured (and enjoying their games). *Scratched Disc* Order at 10. Moreover, unlike *Wolin*, where plaintiffs argued the alleged defect rendered their vehicles "worth less," 617 F.3d at 1176, the *Scratched Disc* Plaintiffs asserted no claim and offered no evidence (nor could they) that their Xbox 360 consoles were "worth less" as a result of a supposed design defect that might cause scratched discs when consoles are knocked over or shaken with more force than the San Francisco earthquake—a supposed defect that affected only 0.4% of consoles, leaving 99.6% of consumers enjoying their games.

Because nothing has changed that warrants revisiting Judge Coughenour's Order, the Court should strike Plaintiffs' class allegations.

### C. In the Alternative, the Court Should Deny Certification of Plaintiffs' Proposed Classes.

Even if the Court were to look behind the *Scratched Disc* Order, it should deny certification for the same reasons as Judge Coughenour: Plaintiffs' claims on their face raise predominantly individual questions of law and fact.

Rule 23 allows any party to move for a determination of whether an action can proceed as a class action. *Vinole*, 571 F.3d 935, 939-40 (9th Cir. 2009); *see also Sipper v. Capital One Bank*, 2002 WL 398769, at *6 (C.D. Cal. Feb. 28, 2002) (granting motion to deny class certification). A party may bring such a motion early in the litigation, as long as the court has a sufficient basis to rule. *See Lumpkin v. E.I. DuPont De Nemours & Co.*, 161 F.R.D. 480, 481 (M.D. Ga. 1995) (denying certification early because "the court is convinced that awaiting further discovery will only cause needless delay and expense"); *LaCasse*, 198 F. Supp. 2d at 1256-65 (granting motion to strike class allegations based solely on pleadings).

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150  Fax: (206) 757-7700

Here, the same counsel previously engaged in extensive discovery on the same claims on behalf of the same proposed classes. The evidence applies with equal force here. As in *Lumpkin*, "awaiting further discovery will only cause needless delay and expense." 161 F.R.D. at 481.

1. **The Court Should Deny Certification of Plaintiffs' Proposed Damaged Disc Subclasses.**

The Court should deny certification of Plaintiffs' proposed Damaged Disc Subclasses for the same reason Judge Coughenour denied Plaintiffs' motion for class certification in the *Scratched Disc Litigation*. As Judge Coughenour found—and the evidence shows—whether a particular Xbox 360 console scratched a game disc as a result of an alleged design defect or, instead, some other cause (such as misuse by the user) raises inherently individual issues:

> Some plaintiffs might have suffered scratched game discs because a pet dog, waking from its sleep to see its master playing *Dance Dance Revolution*, rushed over to join in the fun, knocking the machine off a shelf in the process. Other discs might have scratched when an overzealous *Guitar Hero* strummed the electronic chords too energetically, unwittingly striking the machine while living his fantasy rock-stardom. Whether each user's actions constituted misuse, and whether his or her use/misuse caused the damage, would present individual issues of fact for the jury.

*Scratched Disc* Order at 11.

Even the *Scratched Disc* Plaintiffs recognized that whether a game disc scratched as a result of an allegedly defective console—or user use/misuse—presents an inherently individual question. For example, Jose Caraballo testified that if "the disc drive is inside the Xbox, and then you pick it up and move it around and it scratches the disc, then it should be your fault." Caraballo Dep. 94:22-25. He further testified that if a user toppled over the Xbox 360 while a game disc was spinning, or if the user accidentally kicked the console over while a game disc is spinning, the user—not Microsoft—should be responsible for any scratched disc. *See, e.g.*, *id.* 98-116. Hunter Moskowitz also recognized that individuals should not pick their consoles up to "fix it, realign it somewhere else, to actually move it somewhere." Moskowitz Dep. (Burnside Decl., Ex. Q) 34:22-23. And David Wood agreed "you have to ask each person how they use their Xbox [360] to figure … out" whether the user's conduct (rather than a design flaw) caused disc scratching. Wood Dep. 87:5-19.

MOTION TO STRIKE CLASS ALLEGATIONS
(NO. 11-CV-00722) – 19
DWT 17330410v4 0025936-001400

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150 Fax: (206) 757-7700

Plaintiffs here point to no new facts that, if proven, would lead to a different result. Although they allege Microsoft "recently launched the 'Kinect,' a peripheral device for the Xbox 360 which tracks body movements and allows users to control games through their own movements in space," 2011 Am. Compl. ¶ 22, and that its "campaign for the Kinect advises users to 'Simply jump in'" *id.*, this allegation does not differ materially from the allegations in the *Scratched Disc Litigation*: the *Scratched Disc* Plaintiffs also alleged they played body-movement games, such as Guitar Hero and Dance Revolution Universe. Am. Compl. [Dkt. No. 45] ¶¶ 5.19, 5.20, 5.23, 5.24. Further, in their Motion for Class Certification, the *Scratched Disc* Plaintiffs argued that "[t]here are several cabled peripherals such as game controllers that plug directly into the front of the Xbox 360 console. Pulling cables connected to the Xbox 360 console during vigorous game play, such that the console is unintentionally moved, or reaching around the back of the console to access the power source, are the most likely causes of the console tilting or swiveling that will cause the disc to unchuck and scratch." [Dkt. No. 58] at 11 n.13. But as Judge Coughenour found, whether a game disc scratched as a result of a defective console or, for example, an overzealous "Guitar Hero" who knocks over his or her console while a game disc is spinning, presents an inherently individual question. *Scratched Disc* Order at 11.

Plaintiffs have no class-wide method for determining whether a ***particular*** user's game disc was scratched as a result of an alleged design defect or user use/misuse. Because how a game disc is scratched requires individual proof, and because that issue would predominate at trial, the Court should deny certification of Plaintiffs' proposed damaged disc subclasses.

        **2.**     **The Court Should Deny Certification of Plaintiffs' Proposed Console Owners' Class Allegations.**

The Court should deny certification of Plaintiffs' proposed Nationwide Console Class for the same reason Judge Coughenour denied certification of the *Scratched Disc* Plaintiffs' proposed Console Owners Class: it includes millions of people whose Xbox 360s never scratched a game disc (and never will). *Scratched Disc* Order at 10-11. These proposed class members—more than 99%—suffered no harm. On the contrary, they got "what [they] bargained for." *Id.*

MOTION TO STRIKE CLASS ALLEGATIONS
(NO. 11-CV-00722) – 20
DWT 17330410v4 0025936-001400

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150 Fax: (206) 757-7700

Judge Coughenour's decision rests on firm ground. In *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012 (7th Cir. 2002), some SUV owners sought to represent a class of all persons who bought or leased SUVs equipped with tires showing abnormally high failure rates. The Seventh Circuit reversed certification because the class included owners who received everything they paid for in the vehicles, owners who sold their vehicles for full value, and owners whose tires failed for reasons attributable to their own care. *Id.* at 1018-19. The Seventh Circuit concluded that regulation and individual litigation on behalf of any persons who actually suffered injury was "far superior to a suit by millions of **uninjured** buyers for dealing with consumer products that are said to be failure-prone." *Id.* at 1019 (emphasis in original). *See also Webb*, 272 F.R.D., at 500-01 (denying motion for class certification where Plaintiffs' proposed class would comprise mainly individuals who suffered no harm).

Plaintiffs fail to allege a legally cognizable harm on behalf of the millions of Xbox 360 customers whose consoles never scratched a game disc. Those proposed class members suffered no loss and have no claim to assert against Microsoft. As a result, "individual issues of **damages**" (*i.e.*, harm) would predominate as to every class alleged here. *Scratched Disc* Order at 10 (emphasis in original).

### 3. The Court Also Should Deny Certification of Plaintiffs' Proposed Nationwide Classes Due to Predominantly Individual Issues of Law.

Individual issues of law also preclude Plaintiffs' proposed nationwide classes, as in *Scratched Disc Litigation See id.* at 4-8.

The Xbox 360 Limited Warranty provides that "[i]f you acquired the Xbox Product in the United States, the laws of the State of Washington, U.S.A. will apply to this Limited Warranty. ***The laws of your state of residence will apply to any tort claims and/or any claims under any consumer protection statutes***." Id. at 5 (emphasis in original).

As Judge Coughenour recognized, the need to apply the laws of multiple states to Plaintiffs' tort claims disposes of their request to certify nationwide classes. Courts overwhelmingly reject certification when multiple states' laws apply because such a class is fundamentally unmanageable. *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189-90

MOTION TO STRIKE CLASS ALLEGATIONS
 (NO. 11-CV-00722) – 21
DWT 17330410v4 0025936-001400

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150  Fax: (206) 757-7700

(9th Cir. 2001) (variances in state laws render class so unmanageable that common issues cannot predominate); *Estate of Felts v. Genworth Life Ins. Co.*, 250 F.R.D. 512, 522 (W.D. Wash. 2008); *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 698-99 (Tex. 2002). "[T]he verdict form necessary to submit the case to the jury would read more like a bar exam," and the "jury would have to be instructed to consider various burdens of proof, and in some cases, contradictory standards of conduct." *Harding v. Tambrands Inc.*, 165 F.R.D. 623, 632 (D. Kan. 1996).

Here, Plaintiffs assert products liability claims on behalf of two nationwide classes. 2011 Am. Compl. ¶¶ 191-212. But products liability law varies from state to state. "[M]any state laws that define products liability issues vary in nuance, and nuance becomes terribly important," in outcome determinative ways. *In re Masonite Corp. Hardboard Siding Prods. Liab. Litig.*, 170 F.R.D. 417, 421-24 & nn. 11-17 (E.D. La. 1997) (describing variations). As one court explained, quoting the leading products liability treatise:

> There is no monolithic products liability law in the United States. In fact, ***there is probably no significant aspect of products liability which is precisely the same in all American jurisdictions***. . . . [T]his Balkanization creates enormous confusion when comparing the detailed aspects of the law of one state with that of another. … In [New York], a products liability plaintiff may sue in negligence, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, breach of express warranty, strict liability in tort, as well as intentional or negligent misrepresentation. In [Connecticut, Kansas, Oregon, ***or Washington***], that same plaintiff would have only a single cause of action under the state products liability act. Somewhere else, such as Indiana, that identical plaintiff could sue in negligence or strict liability but not warranty, while a few miles away in Michigan, he or she could only sue in negligence or warranty.

*Fisher v. Bristol-Myers Squibb Co.,* 181 F.R.D. 365, 369 (N.D. Ill. 1998) (quoting 1 Louis R. Frumer & Melvin I. Friedman, *Products Liability* § 2.01 (1997)) (emphasis added). Accordingly, the Court should hold Plaintiffs cannot assert products liability claims on behalf of their proposed nationwide classes.

Individual issues of law likewise bar Plaintiffs' effort to assert statutory consumer protection claims on behalf of their proposed nationwide classes. In their initial Complaint (Dkt. No. 1), Plaintiffs essentially conceded their inability to assert a nationwide consumer protection claim, instead pleading state-specific statutory claims for residents of California, Illinois, Michigan, New York and Washington. *See* Compl. ¶¶ 12(c), 96-188. In their Amended

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
(206) 622-3150 Fax: (206) 757-7700

Complaint, however, Plaintiffs purport to assert a claim for their ***nationwide*** classes under the Washington CPA. *See* 2011 Am. Compl. ¶¶ 12(c), 177-190. But, as Judge Coughenour found, the contractual choice of law clause requires the application of the law of ***each*** consumer's home state (not Washington law), thus barring the assertion of a Washington statutory consumer protection claim for a nationwide class. *See Scratched Disc* Order at 9.

Recent developments in Washington law show that Judge Coughenour got this issue exactly right. In *Schnall v. AT&T Wireless Servs., Inc.*, No. 80572-5, 2011 WL 1434644 (Wash. 2011), the Washington Supreme Court (like Judge Coughenour) enforced a choice of law clause in a consumer contract calling for application of the law of the state associated with the customer's area code. The Court specifically found the choice of law clause "conscionabl[e]." *Schnall*, 170 Wn.2d at *3. The Court therefore held that plaintiffs could ***not*** pursue a Washington CPA claim on behalf of a nationwide class and remanded for the trial court to decide whether it could certify a Washington-only class action. *Id*. at *9-10. For the same reason, the Xbox 360 choice of law clause, which provides that "***[t]he laws of your state of residence will apply to … any claims under any consumer protection statutes,***" precludes a nationwide class to pursue a Washington statutory CPA claim. The Court should deny certification on that basis.[8]

## V.    CONCLUSION

For the foregoing reasons, Microsoft respectfully asks that the Court to strike Plaintiffs' class allegations, or, in the alternative, deny certification of their proposed classes.

DATED this 20th day of July, 2011.

Davis Wright Tremaine LLP
Attorneys for Microsoft Corporation
By   *s/ Fred B. Burnside*
    Stephen M. Rummage, WSBA #11168
    Fred Burnside, WSBA #32491
    1201 Third Avenue, Suite 2200
    Seattle, WA  98101-3045
    Tel.:  (206) 757-8016; Fax:  (206) 757-7700
    E-mail: steverummage@dwt.com
    E-mail: fredburnside@dwt.com

---

[8] The Court need not consider whether individual issues of law preclude Plaintiff's five proposed state-wide subclasses because predominantly individual issues of fact bar them.

MOTION TO STRIKE CLASS ALLEGATIONS
 (NO. 11-CV-00722) – 23
DWT 17330410v4 0025936-001400

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
(206) 622-3150  Fax: (206) 757-7700

Of Counsel:

Charles B. Casper
John G. Papianou
Montgomery, McCracken,
 Walker & Rhoads, LLP
123 South Broad Street
Philadelphia, PA  19109
(215) 772-1500

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
(206) 622-3150  Fax: (206) 757-7700

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 20, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record who receive CM/ECF notification, and that the remaining parties shall be served in accordance with the Federal Rules of Civil Procedure.

DATED this 20th day of July, 2011.

Davis Wright Tremaine LLP
Attorneys for Defendant

By   *s/ Fred B. Burnside*
Stephen M. Rummage, WSBA #11168
Fred Burnside, WSBA #32491
Davis Wright Tremaine LLP
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
Telephone:  (206) 622-3150
Fax:  (206) 757-7700
E-mail: steverummage@dwt.com
E-mail: fredburnside@dwt.com

MOTION TO STRIKE CLASS ALLEGATIONS
(NO. 11-CV-00722) – 25
DWT 17330410v4 0025936-001400

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
(206) 622-3150  Fax: (206) 757-7700