1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7
8

| | |
|---|---|
| SETH BAKER, JESSE BERNSTEIN, MATTHEW DANZIG, JAMES JARRETT, NATHAN MARLOW, and MARK RISK, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| MICROSOFT CORPORATION, a Washington Corporation, | ) ) ) |
| Defendant. | ) ) ) ) |

Case No. 2:11-cv-00722-RSM

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE CLASS ACTION ALLEGATIONS OR, IN THE ALTERNATIVE, DENY CERTIFICATION OF PLAINTIFFS' PROPOSED CLASSES

**Note on Motion Calendar**: October 14, 2011

**ORAL ARGUMENT REQUESTED**

PLAINTIFFS' OPPOSITION TO MOTION TO STRIKE
(Case No. 11-00722-RSM)

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

## TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................ 1

II. STATEMENT OF FACTS ................................................................................. 2

    A.  The Xbox 360 Console's Design Defect .............................................. 2

        1.  Other Optical Disc Drives Are Designed Not to Scratch
            Discs.................................................................................................. 2

        2.  Because of the Xbox 360's Defectively Designed ODD,
            Movements Well Within Normal Expected Use Cause
            Severe Scratches That Make Game Discs Unusable ............................... 3

        3.  Evidence from Prior Litigation Shows That—Under
            Conditions of Normal and Expected Use—the Xbox's
            Design Defect Will Scratch Discs in the Distinctive
            Concentric Pattern............................................................................. 3

            a.  Evidence from consumers............................................................. 3

            b.  Evidence from Microsoft's own testing........................................ 4

            c.  Hiroo Umeno's declaration contradicts his sworn
               testimony.................................................................................. 8

    B.  The Xbox Damaged Plaintiffs' Game Discs During Normal
        Intended Use ......................................................................................... 8

    C.  The Claims and the Proposed Classes .................................................. 8

III. ARGUMENT .................................................................................................... 10

    A.  Motions to Strike Class Allegations Are Rarely Granted................... 10

    B.  Because *Wolin* Is Binding Law, Microsoft's Reliance on "Principles
        of Comity" Is Simply a Distraction and Its Motion to Strike Should
        Be Denied............................................................................................. 11

    C.  Because Common Issues of Law and Fact Predominate, Microsoft's
        Motion to Deny Class Certification Should Be Denied....................... 16

        1.  To Deny Certification of the Warranty and Product Liability
            Claims, Microsoft Argues the Merits—and Argues Them
            Wrongly. ........................................................................................ 16

PLAINTIFFS' OPPOSITION TO MOTION TO STRIKE
(Case No. 11-00722-RSM) – Page i

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

2. Common Questions of Law Predominate for the Nationwide Console Classes. ................................................................. 19

    a. Warranty Claims ......................................................... 19

    b. Consumer Protection Claims ...................................... 19

    c. Product Liability Claims.............................................. 20

3. Common Questions of Law and Fact Predominate for the Damaged Disc Classes. ............................................................. 21

IV. CONCLUSION.................................................................................. 22

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

# TABLE OF AUTHORITIES

## Cases

*Barker v. Lull Eng'g Co.*,
573 P.2d 443 (Cal. 1978) ...........................................................................................18

*Christiansen v. Nat'l Sav. & Trust Co.*,
683 F.2d 520 (D.C. Cir. 1982) ...................................................................................22

*Daffin v. Ford Motor Co.*,
458 F.3d 549 (6th Cir. 2006) .....................................................................................17

*DeMando v. Morris*,
206 F.3d 1300 (9th Cir. 2000) ...................................................................................14

*Gable v. Land Rover N. Am., Inc.*,
No. 07-376, 2008 WL 4441960 (C.D. Cal. Sept. 29, 2008) .....................................15

*Gable v. Land Rover N. Am., Inc.*,
No. 07-376, 2011 WL 3563097 (C.D. Cal. July 25, 2011)........................................15

*Grays Harbor Adventist Christian Sch. v. Carrier Corp.*,
242 F.R.D. 568 (W.D. Wash. 2007) ....................................................................17, 18

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ...................................................................................17

*Hart v. Massanari*,
266 F.3d 1155 (9th Cir. 2001) .............................................................................11, 13

*In re Bridgestone/Firestone, Inc., Tires Products Liability Litigation*,
288 F.3d 1012 (7th Cir. 2002) ............................................................................17, 18

*In re Wal-Mart Stores, Inc. Wage & Hour Litig.*,
505 F. Supp. 2d 609 (N.D. Cal. 2007) ................................................................10, 11

*Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*,
500 U.S. 72 (1991) ....................................................................................................14

*Johnson v. City of Seattle*,
385 F. Supp. 2d 1091 (W.D. Wash. 2005)..................................................................11

*Johnson v. Johnson Chem. Co., Inc.*,
588 N.Y.S.2d 607 (App. Div. 1992) ...........................................................................18

*Keithly v. Intelius Inc.*,
No. 09-1485, 2011 WL 2790471 (W.D. Wash. May 17, 2011) ................................20

*Kerns v. Engelke*,
390 N.E.2d 859 (Ill. 1979) .........................................................................................18

*Loops, L.L.C. v. Amercare Prods., Inc.*,
636 F. Supp. 2d 1128 (W.D. Wash. 2008) .................................................................10

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

*Lyons v. Coxcom, Inc.*,
   718 F. Supp. 2d 1232 (S.D. Cal. 2009) ................................................................11

*Payne v. Goodyear Tire & Rubber Co.*,
   216 F.R.D. 21 (D. Mass. 2003) ...........................................................................18

*Rubio v. Capital One Bank*,
   613 F.3d 1195 (9th Cir. 2010) ...........................................................................14

*Schnall v. AT&T Wireless Services, Inc.*,
   --- P.3d ---, 2011 WL 1434644 (Wash. 2011) ...............................................19, 20

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
   91 F. Supp. 2d 942 (E.D. Tex. 2000) ..................................................................18

*Smith v. Sturn, Ruger & Co.*,
   695 P.2d 600 (Wash. Ct. App. 1985) ..................................................................18

*Tietsworth v. Sears, Roebuck & Co.*,
   No. 09-288, 2011 WL 3240563 (N.D. Cal. July 29, 2011) ....................................14

*Torres v. Cnty. of Oakland*,
   758 F.2d 147 (6th Cir.1985) ..............................................................................22

*Webb v. Carter's Inc.*,
   272 F.R.D. 489 (C.D. Cal. 2011) ..................................................................13, 14

*Wolin v. Jaguar Land Rover North America, LLC*,
   617 F.3d 1168 (9th Cir. 2010) .................................................................... passim

*Zurn Plex Plumbing Prods. Liability Litig.*,
   644 F.3d 604 (8th Cir. 2011) ...................................................................14, 16, 17

## Rules

Fed. R. Civ. P. 23(b)(3) ......................................................................12, 15, 16, 17

Federal Rule of Evidence 704(a) .......................................................................22

## Other Authorities

Am. Law Inst., *Principles of the Law of Aggregate Litigation* § 2.11 cmt. c. (2010) ...................13

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

## I.   INTRODUCTION

The Xbox 360 is defectively designed and actively damages consumer's video game discs during normal intended use, in violation of its warranty and state and federal law.  Microsoft's own testing in February 2009 demonstrates that the console will scratch discs in the home environment.  The only genuine point of dispute, then, is whether this design constitutes a defect for which Microsoft, or its unknowing consumers, should bear the risk.  The Plaintiffs—Seth Baker, Jesse Bernstein, Matthew Danzig, James Jarrett, Nathan Marlow, and Mark Risk (collectively, "Baker")—seek to represent those consumers in this action.

Microsoft has repeatedly been notified by Baker and thousands of other similarly injured consumers that the console does not operate as intended and is damaging consumers' property.  Yet despite Microsoft's awareness of its design flaw—and its own testing in 2009 that confirms the defect—Microsoft has chosen to take no action to protect consumers or remedy its defective product.  Am. Compl. ("Compl.") ¶¶ 1, 23, 30.

This case is governed in large part by *Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168 (9th Cir. 2010), in which the Ninth Circuit reversed a district court that had denied certification of classes analogous to the proposed classes here.  This case is not governed by the October 2009 order on which Microsoft relies, in which a district court denied certification of different classes in a different action.  Order, No. 07-cv-1121-JCC (W.D. Wash. Oct. 5, 2009) (Decl. of Amy Williams-Derry in Supp. of Pls.' Opp. ("Williams-Derry Decl.", Ex. A).  To be sure, many pertinent facts have *not* changed since October 2009: Microsoft continues to manufacture and sell a defective product, and thousands of consumers continue to be harmed by it.  But there have also been significant changes in the *law*—the most significant being the Ninth

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Circuit's decision in *Wolin*. That binding decision shows that the classes proposed here are eminently certifiable.

Baker seeks a fair opportunity to present to the Court evidence of the Xbox 360's design defect, request certification of the proposed classes, and seek a common remedy for a common problem. Defendant's Motion to Strike Plaintiffs' Class Allegations distorts key facts, is legally unsound, and should be denied.

## II.     STATEMENT OF FACTS

**A.     The Xbox 360 Console's Design Defect**

### 1.     Other Optical Disc Drives Are Designed Not to Scratch Discs

Because optical disc drives (sometimes, "ODDs") are designed for robust media, they are found in many consumer products where both the disc drive and its media are routinely subjected to high levels of tilt, swivel, and vibration. *Id.* ¶ 25. Optical disc drives are used, for example, in cars, notebook computers, portable DVD players, and camcorders. *Id.*

Industry engineers have long anticipated that ODDs will be subjected to movement while they are operating, so they have learned to provide simple, inexpensive and obvious measures to protect discs while the ODD is in use and the disc spinning. *Id.* ¶ 26. Thus, although other consumer-operated CDs and DVDs are routinely subjected to movement while operating, none of the media played in these consumer products have experienced widespread disc scratching problems. *Id.* As a result, there is a reasonable consumer expectation that everyday household products with optical disc drives will not cause media discs to be scratched even when the products are tilted, vibrated, or slightly rotated in the course of everyday use. *Id.*

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

2. **Because of the Xbox 360's Defectively Designed ODD, Movements Well Within Normal Expected Use Cause Severe Scratches That Make Game Discs Unusable**

In contrast to the industry standard, the optical disc drive in the Xbox 360 cannot withstand even small unintentional movements that are well within normal expected use. Compl. ¶ 27. The console's defect causes distinctive, circular scratches that are readily discernible by visual inspection. The scratches are concentric and form a groove along the underside of the disc, disrupting the readability of the disc's data track. *Id.* ¶ 23. Based on expert opinion and the results of Microsoft's own testing in 2009, Baker alleges that these scratches are caused by Microsoft's defective design, which under normal use will cause a spinning disc to flex or to become "unchucked" (decoupled) from the spindle. *Id.* ¶ 24. This, in turn, causes the disc to collide with internal components, and become scratched in a tell-tale pattern. *Id.* ¶¶ 23-24.

Although a sticker on the console advises users, "Do not move console with disc in tray," Microsoft never informs the consumer that routine movements associated with normal use will cause irreparable concentric disc scratches. Indeed, the printed user instruction materials packaged with the Xbox 360 do not disclose that the Xbox 360 can scratch discs due to even the smallest of movements, including the small unintentional movements to which all consumer devices will be subjected when used in an ordinary household. *Id.* ¶ 28.

3. **Evidence from Prior Litigation Shows That—Under Conditions of Normal and Expected Use—the Xbox's Design Defect Will Scratch Discs in the Distinctive Concentric Pattern**

a. **Evidence from consumers**

Plaintiffs in earlier litigation testified that they were using the Xbox in a normal expected way when the console scratched their discs. *See* Hanson Dep. 40:21-45:12 (Williams-Derry Decl., Ex. B) (the scratch resulted from firmly stepping on the Xbox 360's "dance pad," used to play

PLAINTIFFS' OPPOSITION TO MOTION TO STRIKE
(Case No. 11-00722-RSM) – Page 3

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

certain games); Ling Dep. 49:19-52:9 (Williams-Derry Decl., Ex. C.) (when the scratch occurred,

the deponent did not intentionally or noticeably move or abuse the console, and was playing a

game in the normal expected manner); Moskowitz Dep. Dep. 62:4-11 (Williams-Derry Decl., Ex.

D) (deponent never moved the console at the time the disc was scratched); Torres Dep. 72:25-

74:19 (Williams-Derry Decl., Ex. E) (deponent never moved the console while playing discs);

Wood Dep. 12:23-14:22 (Williams-Derry Decl., Ex. F) (at most, deponent may have "nudged" the

Xbox "an inch"); Caraballo Dep. 136:7-21 (Williams-Derry Decl, Ex. G) (deponent did not recall

moving the console at the time the scratch occurred).

### b.     Evidence from Microsoft's own testing

In this same litigation, Microsoft retained Dr. Robert Caligiuri to examine and test Xbox

360 consoles on February 27, 2009.  Mot. to Strike Pls.' Class Allegations or, in Alternative, Deny

Cert. of Pls.' Proposed Classes ("Mot. to Strike") 8.  The testing took place at Cascade

Engineering Services, Inc., in Redmond, Washington, in the presence of the *Scratched Disc*

plaintiffs' counsel and their retained expert, Michael D. Sidman, Ph.D., an independent

engineering consultant with over 30 years of experience.

Dr. Caligiuri mounted the *Scratched Disc* plaintiffs' consoles on a shaker table—a

laboratory device used for test purposes to provide shocks of repeatable shape, amplitude, and

duration, and to provide random vibrations of a specific amplitude and frequency range.

Supplemental Decl. of Michael D. Sidman, Ph.D. in Supp. of Pls.' Mot. for Class Cert. in No. 07-

cv-1121-JCC, doc. no. 109 (W.D. Wash.) ("Sidman Suppl. Decl.") ¶ 33 (Williams-Derry Decl.,

Ex. H).  Dr. Caligiuri selected shock and random vibration amplitudes to test the Xbox consoles

that were significantly below the operational limits specified by Microsoft itself in its Xenon ODD

Component Specifications ("Specifications").  *Id.* ¶ 46.  For the shock pulse test, Dr. Caligiuri

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

selected a maximum of      shock pulse, which is less than 72% of the      specified for game disc

"Read Mode Operational Shock" in the Specifications.  *Id.*  For the random vibration amplitude

test, Dr. Caligiuri selected an amplitude equal to only 25% of the random vibration called for by

the Specifications.  *Id.*

During Microsoft's shock pulse testing, both shock Tests 4 and 6 produced continuous

concentric scratches on the plaintiffs' Xbox 360 consoles, demonstrating the console's defective

design.  Dr. Sidman reports:

> During shock Test 4, while the consoles were mounted in a vertical
> orientation on a horizontally actuated shaker table, ***all three of Plaintiffs'***
> ***consoles that had game discs in their ODDs scratched their game discs in***
> ***a continuous concentric manner***.
>
> . . .
>
> During shock Test 6, while the consoles were clamped in a horizontal
> orientation on a vertically actuated shaker table, ***two of the three of***
> ***Plaintiffs' consoles that had game discs in their ODDs scratched their***
> ***game discs***.

*Id.* ¶¶ 37-38 (citation omitted).  Microsoft would now like to discount its own testing, claiming

that the shocks applied to the consoles were greater than those expected in normal use.  *See* Mot.

to Strike 9-11.  But as Dr. Sidman explained, shocks of the magnitude applied in the February

2009 testing are "not uncommon in the home and [are] anticipated by electronics manufacturers

and designers including Microsoft itself."  *Id.* ¶ 31.[1]

Microsoft, however, intones that a game disc will be damaged only when it suffers a force

so intense "as to cause the console to overcome the force of gravity."  Mot. to Strike at 8; *see also*

*id.* at 10.  This rhetoric is meant to call to mind rockets and space shuttles, but forces "well in

---

[1] Although Microsoft's random vibration test did not cause any discs to scratch, because the test applied only 25% of
the vibration called for in the Specifications, the test's results only prove that at 25% of the Specifications, no
scratching occurred.  *See* Sidman Suppl. Decl. ¶ 46 (Williams-Derry Decl., Ex. H).  It proves nothing about whether
scratching occurs if greater vibrational force—still within Microsoft's own Specifications—is applied.

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

excess of 1G" are the stuff of everyday life.  Sidman Suppl. Dec. ¶ 31.  As Dr. Sidman testified,

examples of this kind of force include a door slamming, a child or pet jumping on the floor near

the console, a nearby thunderclap, an object being dropped on the floor nearby, or a bump to a

table or shelf where the console is resting.  *Id.* ¶ 26.  In short, Microsoft's testing demonstrates that

household movement of a scope and scale that Microsoft concedes to be within normal use for the

Xbox 360 console will repeatedly and demonstrably cause significant visible scratches to

consumers' game discs.  Microsoft never warns the consumer that the console is defectively

designed and cannot withstand these kinds of routine, everyday events without significant damage

to consumers' game discs.  Moreover, Microsoft's argument about gravity forgets that the console

was designed to be used either horizontally (like a traditional DVD player), or vertically (so that

the disc is inserted on a plane perpendicular to the floor).  Caligiuri Dep. 97:2-4, 97:15-16

(Williams-Derry Decl., Ex. I).  Obviously, it takes less force to tilt or swivel a vertically-propped

console off its axis than a horizontally-placed console.

 Microsoft's argument about the force of gravity also ignores the expert opinion of Dr.

Sidman.  Dr. Sidman opined that only certain movements caused the Xbox 360 to scratch game

discs in the tell-tale concentric pattern: *rotational* movements in which the console is titled or

swiveled.  *See* Suppl. Sidman Decl. ¶ 13 (Williams-Derry Decl., Ex. H); *see also* Decl. of Michael

D. Sidman, Ph.D. in Supp. of Pls.' Mot. for Class Cert. in No. 07-cv-1121-JCC, doc. no. 83-2

(W.D. Wash.) ("Sidman Decl.") ¶¶ 11-28 (Williams-Derry Decl., Ex. J).  The forces applied in the

February 2009 testing, by contrast, were "intended to produce *only* linear/translational motion," a

non-rotational movement under which an object moves forward or backward without changing its

orientation.  Suppl. Sidman Decl. ¶ 44 (emphasis added) (Williams-Derry Decl., Ex. H).  Thus

"Dr. Caligiuri performed tests that he assumed the Plaintiffs' consoles would pass."  *Id.*  It was

PLAINTIFFS' OPPOSITION TO MOTION TO STRIKE
(Case No. 11-00722-RSM) – Page 6

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

only because of "small *inadvertent* rotational motions of the consoles"—movements of only a few degrees—that the game discs were scratched. *Id.* ¶ 45 (emphasis added). Thus, Microsoft's February 2009 testing showed precisely what Baker maintains here: that due to a flaw in the Xbox 360's drive, minute movements of the console—even minute *unintentional* movements—will scratch game discs.[2]

Microsoft even maintains that the February 2009 testing did not cause the concentric scratches. Mot. to Strike 11. But as Dr. Sidman noted about the scratches from the February 2009 testing, "there is no mistaking [the scratches] for anything other than the concentric circular scratches . . . associated with the game disc coming into contact with an internal ODD component as a result of disc unchucking or flexure under gyroscopic force." Sidman Suppl. Decl. ¶ 39 (Williams-Derry Decl., Ex. H).

Microsoft's contention that the discs were still playable after being scratched, Mot. to Strike 11, misses the point. During laboratory testing, Microsoft opened the disc drive and tested the disc for scratching after every test. Decl. of Kevin Coluccio in Supp. of Pls.' Opp. ¶ 3. Thus, as soon as Microsoft's testing resulted in *any* disc scratching, Microsoft abandoned any further testing on that disc. *Id.* In the home environment, however, no consumer would test his or her disc after every ten minutes of game play, and thus—in this respect—the laboratory conditions of the Microsoft test differed from the home environment. Further, Microsoft made no effort to read the entire data track after the scratching occurred. Sidman Suppl. Decl. ¶ 40 (Williams-Derry

---

[2] In the earlier litigation, Dr. Caligiuri testified that he had directed certain "rotation testing" of the Xbox 360 console at some point before February 2009. As Dr. Sidman pointed out, however, Dr. Caligiuri provided no written protocol for this experiment, could not reliably gauge the actual rate of rotation of the console during the testing, and most importantly, *did not test disc scratching itself*, and instead only tested whether the disc scratching was audible. Sidman Suppl. Decl. ¶¶ 17-19 (Williams-Derry Decl, Ex. H).

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Decl., Ex. H).  A scratch that destroys the "third chapter," as it were, of the disc, would not be apparent to a player who is still at the "first chapter" of game play.  *See id.*

          **c.**       **Hiroo Umeno's declaration contradicts his sworn testimony**

Microsoft relies on Hiroo Umeno's declaration to argue that the Specifications far exceed normal and expected conditions.  Mot. to Strike 7.  This assertion would come as some surprise to the Hiroo Umeno who testified in earlier litigation that normal conditions of use were *identical to* those Specifications.  Dep. Tr. of Hiroo Umeno 116:1-7, 117:20-24, 123:23-124:1 (Williams-Derry Decl., Ex. K); *see also* Sidman Suppl. Decl. ¶ 28 (Williams-Derry Decl., Ex. H) (noting that in the industry, it is standard to require that ODDs be resistant to forces that are even greater than those in the Xbox 360 specifications).

**B.**     **The Xbox Damaged Plaintiffs' Game Discs During Normal Intended Use**

Plaintiffs reside in California, Illinois, Michigan, New York, and Washington and purchased Xbox 360 consoles between November 2006 and November 2010, and each has had at least one game disc irreparably scratched by their Xbox 360 console during routine game play.  Compl. ¶¶ 42-58.  Each has notified Microsoft of the scratch, and Microsoft has refused to provide any of them with a remedy.[3]  *Id*. ¶ 48; *id.* Ex. A.

**C.**     **The Claims and the Proposed Classes**

The Amended Complaint asserts a number of different claims that seek recompense for consumers of the Xbox 360.

The First, Second, and Third Causes of Action (the "*Warranty Claims*") allege that the Xbox 360 was defectively designed, and that this defective design breached an express warranty

---

[3] None of the Plaintiffs were party to the prior, voluntarily dismissed action before Judge Coughenour, *In re Microsoft Xbox 360 Scratched Disc Litigation*, No. 2:07-01121 (W.D. Wash).

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1   and an implied warranty, and violated the Magnuson-Moss Warranty Act.  Compl. ¶¶ 61-97.

2   These claims are asserted on behalf of a Nationwide Console Class, which includes everyone in

3   the country who owns Xbox 360 consoles.  *Id.* ¶ 12(a).

4        The Tenth and Eleventh Causes of Action (the "***Product Liability Claims***") allege that

5   Microsoft defectively designed the Xbox 360 and failed to adequately warn consumers that this

6   defect posed a risk to their game discs.  *Id.* ¶¶ 191-212.  These claims are asserted on behalf of the

7   Nationwide Console Class, as well as the Nationwide Damaged Disc Subclass.  *Id.* ¶¶ 192, 203.

8   This latter subclass includes everyone in the country whose game discs have been damaged by

9   Xbox 360.  *Id.* ¶ 12(b).

10       The Fourth through Ninth Causes of Action (the "***Consumer Protection Claims***") allege

11  that Microsoft's marketing and sale of its defectively designed Xbox 360, its failure to inform

12  consumers of that defect, and Microsoft's illusory "disc replacement program" violate the

13  consumer protection laws of California, Illinois, Michigan, New York and Washington.  *Id.* ¶¶ 98-

14  190.  The claims under California, Illinois, Michigan and New York law are asserted on behalf of

15  State Subclasses, which are defined as everyone in the respective states that suffered the

16  distinctive circular scratches to their game discs.  *Id.* ¶ 12(c); *see also id.* ¶¶ 99, 115, 134, 151,

17  165.  The claim under Washington law is asserted on behalf of the Nationwide Damaged Disc

18  Subclass.  *Id.* ¶ 178.

19       The Nationwide Damaged Disc Subclass, as well as the State Subclasses, are defined as

20  including "only those persons whose discs have suffered the distinctive circular scratch caused by

21  the game disc coming into contact with internal components in the [optical disc drive] of the Xbox

22  360 – damage that causes the game discs' normal functions and operations to be impaired."  *Id.* ¶

23  12 n.1.  Thus, the discs held by any member of the subclasses that have been damaged by the

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Xbox 360 each bear a telltale concentric scratch that can be readily discerned by visual inspection. Baker alleges that the console's optical disc drive design defect is the sole and proximate cause of this scratch.

Contrary to Microsoft's assertion, Mot. to Strike at 2, the proposed classes are not the same classes considered for certification in the *Scratched Disc* litigation. In addition to a nationwide class under the express warranty, which affirmatively calls for the application of *Washington* law, Baker seeks to certify five subclasses, each of which would rely on the consumer protection law of only one state. No fifty-state analysis of consumer protection law would be required.

Baker alleges several issues that are common to the proposed classes, including: (1) whether the Xbox 360 console's optical disc drive is defective; (2) whether Microsoft has concealed the nature of this defect; (3) whether Microsoft's conduct violates the Washington Consumer Protection Act or the consumer protection laws of California, Illinois, Michigan, or New York; (4) whether Microsoft has breached its express warranty to consumers; and (5) whether Microsoft has breached its implied warranty to consumers. *See* Compl. ¶ 15(f); *see also Wolin*, 617 F.3d at 1172 (finding that similar set of common questions satisfied commonality under Fed. R. Civ. P. 23(a)(2)). As set forth below, these classes are fully certifiable, and Defendants' motion to strike class allegations should be denied.

## III.   ARGUMENT

### A.   Motions to Strike Class Allegations Are Rarely Granted.

Motions to strike are disfavored, *see, e.g.*, *Loops, L.L.C. v. Amercare Prods., Inc.*, 636 F. Supp. 2d 1128, 1138 (W.D. Wash. 2008), and "the granting of motions to dismiss class allegations before discovery has commenced is rare," *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007); *accord, e.g.*, *Lyons v. Coxcom, Inc.*, 718 F. Supp. 2d 1232,

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1236 (S.D. Cal. 2009).  Moreover, granting such motions "*should* be done rarely." *Wal-Mart*, 505

F. Supp. 2d at 615 (emphasis added) (quotation marks and citation omitted).  Only when it is clear

"from the face of the pleadings that a class is not certifiable as a matter of law" can a motion to

strike class allegations—or, for that matter, a motion to deny class certification on the pleadings—

be granted.  *Lyons*, 718 F. Supp. 2d at 1236.

**B.  Because *Wolin* Is Binding Law, Microsoft's Reliance on "Principles of Comity" Is Simply a Distraction and Its Motion to Strike Should Be Denied.**

In this procedural posture, this case is uncomplicated.  It is about a simple rule: district

courts within the Ninth Circuit are "bound to follow . . . Ninth Circuit precedent under the

principle of *stare decisis*."  *Johnson v. City of Seattle*, 385 F. Supp. 2d 1091, 1098 n.5 (W.D.

Wash. 2005) (citing *Hart v. Massanari*, 266 F.3d 1155, 1168, 1175 (9th Cir. 2001)).  Under this

uncontroversial principle, the Motion to Deny Class Certification should be denied.

Under the Warranty and Product Liability Claims, Baker alleges that ***100%*** of Microsoft

Xbox 360s have a fundamental design defect.  The Warranty and Product Liability Claims assert

that Microsoft is liable for the presence of this defect—and, in the case of the warranty claims, for

its failure to correct it.  *See, e.g.*, Compl. ¶¶ 27-28, 66, 74, 92, 197-98, 205.  In previous litigation,

evidence was adduced to show that the Xbox 360 console's ODD has an *inherent* design defect.

*See, e.g.*, Sidman Decl. ¶¶ 29-40 (Williams-Derry Decl., Ex. J).  While only some console owners

have experienced scratched discs as a result of the design defect, every console suffers from the

design defect, and therefore Microsoft's liability under the Warranty and Product Liability Claims

arises with respect to every console.

In *Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168 (9th Cir. 2010), the

plaintiffs brought claims asserting that all Land Rover LR3s sold in Michigan and Florida in

certain years were defectively designed.  *Id.* at 1171.  Under consumer protection laws, they

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

alleged that "Land Rover represented that the vehicles had particular characteristics or were of a particular standard when they were of another, and Land Rover failed to reveal material facts about the vehicles." *Id.* at 1173.  Under an implied warranty theory, they alleged that "the vehicles were defective and not of merchantable quality at the time they left Land Rover's possession." *Id.*  Finally, they alleged that Land Rover had breached its express warranty because it had "refused to repair the tires and the geometry defect." *Id.*  Land Rover argued, and the district court held, that common issues did not predominate under Rule 23(b)(3) because not all of the vehicles manifested the defect. *See id.* at 1171.

The Ninth Circuit disagreed.  It held that common issues predominated because, "[a]lthough individual factors may affect premature tire wear, they do not affect whether the vehicles were sold with an alignment defect." *Id.* at 1173.  "[A]ll of the proposed class members," the court noted, "allege that their vehicles suffer from the same defect.  These claims *require* common proof of the existence of the defect and a determination whether Land Rover violated the terms" of its warranties. *Id.* at 1174 (emphasis added).

It is clear that *Wolin* governs Baker's Warranty and Product Liability Claims.  As in *Wolin*, Baker alleges that the Xbox 360's design defect is present in all consoles.  As in *Wolin*, Baker asserts that this design defect leads to liability, whether under warranty or under product liability law.  At least where the Warranty and Product Liability Claims are concerned, this is a straightforward case that Ninth Circuit precedent directly controls.

For this reason, Microsoft's discussion of "principles of comity" is irrelevant.  Even Microsoft agrees, as it must, that if "a relevant change in law has occurred," then comity does not apply.  Mot. to Strike 14.  For as the ALI recognizes, "when the basis for an earlier denial . . . is no longer present in a subsequent proceeding," then comity drops out of the picture.  Am. Law Inst.,

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

*Principles of the Law of Aggregate Litigation* § 2.11 cmt. c. (2010); *see also id.* ("The expectation of this Section is that situations for rebuttal of the presumption [against class certification] . . . *may arise more frequently than situations with respect to some other presumptions used in the law . . . .*" (emphasis added)).  Here the basis of the earlier denial of class certification is no longer present, because *Wolin*, which did not exist at the time of the earlier denial in October 2009, is now binding precedent.[4]  Indeed, ignoring *Wolin* would violate one of the most fundamental principles of the federal court system: district courts are bound by the opinions of the circuit court in which they are located.  *See Hart*, 266 F.3d at 1170.

Seemingly aware that "principles of comity" are irrelevant to this case, Microsoft also unsuccessfully tries to distinguish *Wolin*.  Mot. to Strike 15-18.  Unlike in *Wolin*, Microsoft says, the question whether customers suffered scratched discs as a result of the design defect presents individual issues of harm.  *Id.* at 16.  Even if Microsoft is right that *that* question presents individual issues—which it is not—Microsoft's argument is nonresponsive.  Baker's Warranty and Product Liability Claims do not turn on whether the Xbox 360's design defect caused a scratched disc in a particular instance; they turn on *the existence of the design defect itself*.  Since Baker alleges that *all* Xbox 360s contain that inherent design defect, Microsoft's attempt to distinguish *Wolin* fails.

Microsoft also relies on *Webb v. Carter's Inc.*, 272 F.R.D. 489 (C.D. Cal. 2011), but the case is inapposite.  The complaint in *Webb*, as a court in the Northern District of California recently pointed out, "did not allege that the product at issue had inherent defects."  *Tietsworth v.*

---

[4] Because a Ninth Circuit precedent has intervened between the earlier denial and this case, and because that precedent controls this case, the decisions that Microsoft cites—apparently to argue that the earlier certification decision has *precedential* force—are simply not on point.  (Mot. to Strike 13-14.)  In none of those cases was there an intervening change in law by a higher court.  And it is just not the case that district court decisions—even those that have not been abrogated by a court of appeals—are precedential.  *See Hart*, 266 F.3d at 1174 (noting that district court decisions do not bind other courts within that district).

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

*Sears, Roebuck & Co.*, No. 09-288, 2011 WL 3240563, at *3 (N.D. Cal. July 29, 2011).  Indeed, the plaintiffs in *Webb* could not succeed in showing that the products—children's clothing—had any defect at all, and thus could not show that anyone had actually been injured.  *Webb*, 272 F.R.D. at 499-500.  In this case, by contrast, Plaintiffs have alleged, and Dr. Sidman has opined, that every Xbox is inherently defective and is certain to scratch game discs when subjected to forces that are well within normal, expected limits.  *E.g.*, Compl. ¶ 27; Sidman Decl. ¶ 33 (Wiliams-Derry Decl., Ex. J); Sidman Suppl. Decl. ¶¶ 25-26, 31 (Williams-Derry Decl., Ex. H).  "Thus, *Webb* actually is consistent with the conclusion that parties *may* certify a class based on an inherent defect theory even if all class members have yet to experience a manifestation of the alleged effect."  *Tietsworth*, 2011 WL 3240563, at *3.

Finally, Microsoft is wrong to suggest that a design defect that does not manifest itself in a scratched disc cannot give a plaintiff Article III standing.  It is blackletter law that Article III standing can be premised on the invasion of a right, whether granted by statute or by contract.  *See, e.g.*, *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204 n.3 (9th Cir. 2010) (citing *DeMando v. Morris*, 206 F.3d 1300, 1303 (9th Cir. 2000)); *see also Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72, 77 (1991) ("[S]tanding is gauged by the specific common-law, statutory or constitutional claims that a party presents.").  Indeed, in similar circumstances, the Eighth Circuit held that there was standing even though a defect had not yet manifested itself. *In re Zurn Plex Plumbing Prods. Liability Litig.*, 644 F.3d 604, 616-17 (8th Cir. 2011).  And if Microsoft is suggesting that a design defect by itself cannot give rise to *liability*, that is clearly a merits issue and does not affect whether liability should be adjudicated collectively.  *See id.* at 617 (whether a roof warranty is breached when a roof defect that has not yet led to a leak is a merits

PLAINTIFFS' OPPOSITION TO MOTION TO STRIKE
(Case No. 11-00722-RSM) – Page 14

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

question, not a certification question); *Wolin*, 617 F.3d at 1173 ("What Land Rover argues is whether class members can win on the merits.").[5]

Microsoft's Motion should also be denied with respect to the Consumer Protection Claims. The certification decision in the *Scratched Disc* case relied almost exclusively on the *Wolin* district court opinion, and adopted what the Ninth Circuit called a "threshold manifestation requirement." *Wolin*, 617 F.3d at 1174. The court in the *Scratched Disc* litigation reasoned that certification was precluded because "'[i]f the defect has not manifested [during the limited useful life of the Xbox 360], the buyer has received what he bargained for.'" Order 10-11 (Williams-Derry Decl., Ex. A) (quoting *Gable v. Land Rover N. Am., Inc.*, No. 07-376, 2008 WL 4441960, at *3 (C.D. Cal. Sept. 29, 2008)) (alterations in original). As the *Wolin* court pointed out, however, it is a merits question whether the buyer has received what he bargained for. *See Wolin*, 617 F.3d at 1173. And even where it expressed some doubts about ultimate certification, it held that a threshold manifestation requirement was erroneous as a matter of law and required remand. *See id.* at 1174. Given the existence of *Wolin*, the "basis for the earlier denial" of certification "is no longer present" and deference to the earlier decision would be misplaced. Am. Law Inst., *supra*, § 2.11 cmt. c.

---

[5]   Microsoft also maintains that the Order denying class certification in the *Scratched Disc Litigation* relied only "in part" on the district court decision that *Wolin* reversed. Mot. to Strike 15. Even the most casual perusal of the Order, however, shows this contention to be false; in fact, the Order relied almost solely on the district court decision reversed in *Wolin*. *See* Order 9-11. The district court reversed in *Wolin* has now certified a class in the *Land Rover* action. *Gable v. Land Rover N. Am., Inc*., No. 07-376, 2011 WL 3563097 (C.D. Cal. July 25, 2011) (certifying class under Fed. R. Civ. P. 23(b)(3) and bifurcating liability and damages for trial).

PLAINTIFFS' OPPOSITION TO MOTION TO STRIKE
(Case No. 11-00722-RSM) – Page 15

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**C.      Because Common Issues of Law and Fact Predominate, Microsoft's Motion to Deny Class Certification Should Be Denied.**

As Baker has shown, Microsoft's appeal to "principles of comity" is a mere distraction. This Court should therefore independently examine whether this action is suitable for class treatment.[6]

Microsoft argues that Baker cannot satisfy the requirement of Rule 23(b)(3) that "questions of law or fact common to class members predominate over any questions affecting only individual members."[7]  This argument relies on a flatly inaccurate version of the merits to try to defeat certification and invents individual issues of law and fact out of the ether.

**1.      To Deny Certification of the Warranty and Product Liability Claims, Microsoft Argues the Merits—and Argues Them Wrongly.**

Microsoft argues that where the Xbox's design defect has not yet caused scratched discs, there is no injury and therefore individual issues of damages predominate.  This argument is both irrelevant and wrong on the law.  It should be rejected.

Microsoft's argument that "more than 99%" of class members got what they bargained for, Mot. to Strike 20, is irrelevant to the Motion to Strike because it deals with the *merits* of Baker's claims, not whether Baker's claims can be certified.  As the Ninth Circuit recently pointed out, "manifestation of a defect is not a prerequisite to class certification," because where a claim turns on the "existence of the defect" itself, an argument about lack of manifestation is really about "whether class members can win on the merits."  *Wolin*, 617 F.3d at 1173; *accord Zurn Plex Plumbing*, 644 F.3d at 617.

---

[6] Baker's deadline for filing a motion for class certification is 90 days after the entry of an order resolving Microsoft's Motion to Strike.  Stipulation & Order Regarding Deadline for Filing of Pls.' Mot. for Class Cert. 3 (doc. 21).

[7] Microsoft urges that the Court "should deny certification for the same reasons as Judge Coughenour," Mot. to Strike 18, who denied certification solely on the ground that "the predominance requirement" was not satisfied.  Order 8 (Williams-Derry Decl., Ex. A).

PLAINTIFFS' OPPOSITION TO MOTION TO STRIKE
(Case No. 11-00722-RSM) – Page 16

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Microsoft's argument also gets the law wrong.  The manifestation of a defect through an injury to property or person is not a required element for a breach of warranty claim. In *Hanlon v. Chrysler Corp.*, for example, the Ninth Circuit approved a settlement class that included owners of "all models of Chrysler minivans, . . . *includ[ing] minivan owners whose latches remain operable*," because "[t]he narrow focus of the proposed class was to obtain a defect-free rear liftgate latch . . . , or receive adequate non-personal injury compensatory damages."  150 F.3d 1011, 1020 (9th Cir. 1998) (emphasis added); *see also Zurn Pex Plumbing*, 544 F.3d at 617 ("[T]o give rise to a warranty claim a fitting must contain a defect, but that it need not have already caused external damage."); *Daffin v. Ford Motor Co.*, 458 F.3d 549 (6th Cir. 2006) (upholding certification over defendant's assertion that a defect present in the throttle assembly of the putative class's cars had not injured the class).  Indeed, a court in this district has certified a class that alleged a defectively designed furnace and asserted, among other things, a claim for breach of warranty—even though not all of the class members had suffered a manifestation of the defect. *See Grays Harbor Adventist Christian Sch. v. Carrier Corp.*, 242 F.R.D. 568, 573-74 (W.D. Wash. 2007) (certifying the class under Rule 23(b)(3) even though "[t]he nature of the claim . . . implies that most of the class members are not even aware that they have potentially suffered from an injury").

Microsoft's reliance on *In re Bridgestone/Firestone, Inc., Tires Products Liability Litigation*, 288 F.3d 1012 (7th Cir. 2002), is misplaced.  There, three different claimed defects affected sixty-seven different models of tires, and individual issues arose as to whether the claimed defects really were defects with respect to all sixty-seven different models.  See id. at 1019.  In this case, by contrast, there is one product at issue with one alleged defect.  Further, the conditions of expected use for that product—maximum expected vibrations, shocks, and

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

movement—can be proved on a classwide basis, because those limits of permissible use apply to every consumer.  In other words, even if a consumer's actions caused the movement of the Xbox 360, Microsoft does not have an individualized defense to the Product Liability Claims as long as those actions were within the reasonably foreseeable conditions of use—conditions that may be proved on a classwide basis.  *See, e.g.*, *Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 28 (D. Mass. 2003); *see also, e.g.*, *Smith v. Sturn, Ruger & Co.*, 695 P.2d 600, 744 (Wash. Ct. App. 1985) (manufacturer is liable for all injury arising from reasonably foreseeable use); *Barker v. Lull Eng'g Co.*, 573 P.2d 443, 454 (Cal. 1978) (same); *Kerns v. Engelke*, 390 N.E.2d 859, 864 (Ill. 1979) (same); *Johnson v. Johnson Chem. Co., Inc.*, 588 N.Y.S.2d 607, 610 (App. Div. 1992) (same).  One of the common questions in this action is whether—under those limits of normal, expected use—the defect that affects every single Xbox 360 console is actionable.  *See Grays Harbor Adventist*, 242 F.R.D. at 573 ("One common question is whether Carrier's furnaces are defective by design, regardless of any individual factors such as installation, maintenance, or type of fuel used.").  *Bridgestone/Firestone* never hinted that unmanifested design defects themselves are not suitable for class treatment, a proposition that would bring *Bridgestone/Firestone* into conflict with *Wolin*.  Rather, when it referred to "uninjured buyers," it was referring to solely to physical rather than economic injury—something that Microsoft's tactical quoting conceals.  *Compare* Mot. to Strike 21, *with Bridgestone/Firestone*, 288 F.3d at 1019 ("Regulation by the NHTSA, coupled with tort litigation by persons suffering physical injury, is far superior to a suit by millions of uninjured buyers . . . ." (first emphasis added)).[8]

---

[8] *See also Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 958 (E.D. Tex. 2000) ("Courts have been reluctant to certify personal injury classes but have consistently certified classes involving economic harms.").

PLAINTIFFS' OPPOSITION TO MOTION TO STRIKE
(Case No. 11-00722-RSM) – Page 18

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

In sum, Baker's legal theory focuses on the allegations of a defectively designed product that is not fit for its normal, intended use.  Baker alleges economic injury stemming from the design defect, regardless of whether it has (yet) scratched a particular consumer's disc. Accordingly, a scratched disc is not a prerequisite to certify the proposed class, and Microsoft's attempt to deny class treatment for the Warranty and Product Liability Claims should be rejected.

### 2. Common Questions of Law Predominate for the Nationwide Console Classes.

#### a. Warranty Claims

Defendant does not attempt to claim, nor could it, that individual issues of law predominate with respect to Baker's Warranty Claims.  The Xbox 360's Limited Warranty explicitly chooses Washington law for the adjudication of disputes arising under it.  Because Baker's Warranty Claims are governed by a single state's law, and an identical warranty applied to all putative members of the nationwide class whose Xboxes all possessed the identical defect, common issues predominate both legally and factually.  *See* Compl. ¶¶ 62, 73.

#### b. Consumer Protection Claims

Common questions of law clearly predominate over individual issues for the consumer protection claims.  The Complaint seeks to certify five discrete and manageable subclasses or, in the alternative, a nationwide class under Washington's Consumer Protection Act (WCPA).  Each of these proposed classes would rely on the consumer protection law of only one state.  At no point would a fifty-state analysis of consumer protection law be required.

Current law holds that Baker can pursue WCPA claims on behalf of a nationwide class. Microsoft supports its argument to the contrary by citing *Schnall v. AT&T Wireless Services, Inc.*, --- P.3d ---, 2011 WL 1434644 (Wash. 2011), but the decision does not preclude the certification of nationwide class claims under the WCPA.  In fact, if anything it stands for the proposition that

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1  such claims may be certified—as Judge Lasnik of this district has recently recognized.  *Keithly v.*

2  *Intelius Inc.*, No. 09-1485, 2011 WL 2790471 (W.D. Wash. May 17, 2011) (reinstating nationwide

3  class claims under the WCPA in a similar action post-*Schnall*); *see also Schnall*, 2011 WL

4  1434644, at *11 n.3 (Sanders, J. dissenting) ("[T]he majority, silent on this issue, does not find

5  [residence-based] choice of law clauses applicable to the CPA claims.").  The *Intelius* court

6  interprets *Schnall* as allowing claims asserted by non-resident consumers against Washington

7  corporations, and states emphatically that "[t]his interpretation is consistent with both the purpose

8  of the CPA and the statutory language."  2011 WL 2790471, at *1.

9                     **c.**        **Product Liability Claims**

10          Washington law governs the Product Liability Claims in this case, ruling out any

11  manageability concerns.  Defendant cannot cite a single precedent stating that its residence-based

12  choice of law provision applies to tort claims.  Defendant's reliance on *Schnall* is misleading

13  because, as explained in the previous section, the Supreme Court of Washington applied the

14  choice of law provision only to nationwide contract claims. *See Schnall*, 2011 WL 1434644, at *2.

15          The distinction is necessary since, in Washington, "a choice of law provision in a contract

16  does not govern tort claims arising out of the contract."  *Haberman v. Wash. Pub. Power Supply*

17  *Sys.*, 744 P.2d 1032, 1066 (1987).  Instead, Washington courts apply "the most significant

18  relationship test," considering a choice-of-law provision merely "as an element" of that test. *Id.*;

19  *see also, e.g.*, *Zenaida-Garcia v. Recovery Sys. Tech., Inc.*, 115 P.3d 1017, 1019-20 (Wash. Ct.

20  App. 2005) (applying Restatement (Second) of Conflict of Laws § 145 (1971)).  Here, for the

21  Product Liability Claims, the most significant relationship is with Washington.  Washington is

22  where Microsoft is headquartered and incorporated.  Compl. ¶ 9.  Washington is where the Xbox's

23  defective design was created and where Microsoft "made decisions, received complaints, and

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

issued communications" about that design.  *Id.* ¶ 32.  Washington is therefore the source of injury, and Washington law should govern.  *See Kelley v. Microsoft Corp.*, 251 F.R.D. 544, 551-53 (W.D. Wash. 2008).  For this reason, Defendant's concerns over manageability are misplaced and individual issues of law do not predominate.

### 3. Common Questions of Law and Fact Predominate for the Damaged Disc Classes.

In an effort to avoid class certification, Microsoft conjures up imaginary scenarios where dogs and users knock over the consoles and cause discs to be scratched.  Mot. to Strike 19-20.  But Microsoft offers no competent evidence that a single one of the putative class members' game discs were scratched in this manner—or in any other way apart from Microsoft's own defective hair-trigger console design.  "[A]rguments woven entirely out of gossamer strands of speculation and surmise" cannot "tip the decisional scales in a class certification ruling."  *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000) (citing *Zeigler v. Gibralter Life Ins. Co.*, 43 F.R.D. 169, 173 (D.S.D. 1967)); *accord Soc. Servs. Union, Local 535 v. Cnty. of Santa Clara*, 609 F.2d 944, 948 (9th Cir. 1979) (noting that "[m]ere speculation" cannot "support denial of initial class certification").

The only "evidence" that Microsoft offers are quotations from the testimony of the plaintiffs in earlier litigation, but none of this testimony suggests the existence of individual issues.  Mot. to Strike 19.  Part of the problem is that Microsoft plucks its quotations out of context.  The quotations from the depositions of Jose Caraballo and David Wood are especially misleading.  Caraballo testified that he "didn't move [his] console."  Caraballo Dep. 94:13 (Williams-Derry Decl, Ex. G).  Likewise, Wood never misused his console, recognized that consumers are expected not to misuse their consoles, and never witnessed anyone else misusing a console.  Wood Dep. 12:23-14:22, 85:17-86:2, 87:13-14 (Williams-Derry Decl., Ex. F).

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Moskowitz's belief that consumers "should not pick their consoles up," Mot. to Strike 19, actually *supports* the position that Baker takes here.  For if consumers like Moskowitz recognized limitations on normal expected use, then it is highly unlikely that consumers would go beyond those limitations.[9]

## IV.   CONCLUSION

For the reasons given above, Microsoft's Motion to Strike should be denied.

DATED this 16th day of September, 2011.

KELLER ROHRBACK L.L.P.


By  s/ Amy Williams-Derry
Amy Williams-Derry, WSBA #28711
Mark A. Griffin, WSBA #16296
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Telephone:  (206) 623-1900


CHITWOOD HARLEY HARNES LLP
Gregory E. Keller, WSBA #13040
Darren T. Kaplan
2300 Promenade II
1230 Peachtree Street, N.E.
Atlanta, Georgia 30309
Telephone: (404) 873-3900

KOPELOWITZ OSTROW FERGUSON
WEISELBERG KEECHL
Jeffrey M. Ostrow
200 S.W. 1st Avenue, 12th Floor
Fort Lauderdale, FL 33301

---

[9] Furthermore, the testimony on which Microsoft relies was in response to questions that sought legal conclusions, and Federal Rule of Evidence 704(a) prohibits a lay witness from offering legal conclusions.  *See, e.g.*, *Torres v. Cnty. of Oakland*, 758 F.2d 147, 151 (6th Cir.1985); *Christiansen v. Nat'l Sav. & Trust Co.*, 683 F.2d 520, 529 (D.C. Cir. 1982).

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Telephone: (954) 525-4100


STRITMATTER KESSLER WHELAN
COLUCCIO
 Paul L. Stritmatter, WSBA # 4532
 Kevin Coluccio, WSBA # 16245
 Brad J. Moore, WSBA # 21802
 200 Second Avenue West
 Seattle, Washington  98119
 Telephone: (206) 448-1777

WASSERMAN COMDEN CASSELMAN &
ESENSTEN LLP
 Melissa M. Harnett
 Gregory B. Scarlett
 5567 Reseda Blvd, Suite 330
 Tarzana, California 91356
 Telephone: (818) 705-6800
 Facsimile: (818) 996-8266


*Attorneys for Plaintiffs*

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2011, I electronically filed the foregoing:

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE CLASS ACTION

ALLEGATIONS OR, IN THE ALTERNATIVE, DENY CERTIFICATION OF PLAINTIFFS'

PROPOSED CLASSES; DECLARATION OF AMY WILLIAMS-DERRY IN SUPPORT OF

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE CLASS ACTION

ALLEGATIONS OR, IN THE ALTERNATIVE, DENY CERTIFICATION OF PLAINTIFFS'

PROPOSED CLASSES; and DECLARATION OF KEVIN COLUCCIO IN SUPPORT OF

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE CLASS ACTION

ALLEGATIONS OR, IN THE ALTERNATIVE, DENY CERTIFICATION OF PLAINTIFFS'

PROPOSED CLASSES with the Clerk of the court using the CM/ECF system which will send

notification of such filing to all counsel of record who receive CM/ECF notification.  A copy of

this document will also be served on the following individual(s) via hand delivery

Stephen M. Rummage, WSBA #11168
Fred B Burnside, WSBA #32491
John Goldmark
**DAVIS WRIGHT TREMAINE**
1201 Third Avenue Suite 2200
Seattle, WA 98101-3045
Telephone:  206-757-8016
Fax:  206-757-7016

DATED this September 16, 2011.

KELLER ROHRBACK L.L.P.

By  s/ Amy Williams-Derry
    Amy Williams-Derry, WSBA #28711
    Mark A. Griffin, WSBA #16296
    1201 Third Avenue, Suite 3200
    Seattle, WA 98101
    awilliams-derry@kellerrohrback.com

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384